PETER C. LAKEMAN *versus* JOSEPH W. POLLARD AND ALS.

If the performance of a contract becomes impossible by sickness or similar disability, the contractor may recover on a *quantum meruit* for what he did perform.

When the laborer has adequate cause to justify an omission to fulfill his contract, he cannot be regarded in fault.

Where from the prevalence of a fatal disease in the vicinity of the place where one had contracted to labor for a specified time, the danger was such as to render it unsafe and unreasonable for men of ordinary care and common prudence to remain there, it is sufficient cause for not fulfilling the contract.

EXCEPTIONS were taken by the defendant to the rulings of MAY, J., in this case, which is an action of assumpsit for three months' labor, at thirty dollars per month from May 1 to August 1, 1854.

The defendants relied upon their brief statement that the plaintiff agreed to work during the sawing season of A. D. 1854, and had left before the season expired without the leave or consent of the defendants, and without any justifiable cause.

It was proved that the said sawing season commenced May 1st and ended the last of November, that year, A. D. 1854, and that plaintiff left July 29th or 30th.

It was proved that the plaintiff was in the defendants' employ from May 1st to July 29th or 30th, and one of the plaintiff's witnesses testified that the plaintiff did extra work —a day or two—within that time.

The plaintiff called Enoch Bagley, who testified, in answer to questions of plaintiff's counsel; and subject to objections made thereto by defendants' attorney, that he (the witness) worked there at the same time and place the plaintiff did, and that he (the witness) *was not hired* for the season, but *only* so long as he should think fit.

Valentine Nute and Alvin Stone, both likewise introduced by plaintiff, testified that they also worked there for defendants, at the same time and place, and were not hired by the season, but only to remain there so long as they pleased.

This testimony was admitted, the defendants' counsel objecting.

The witnesses all testified that it was healthy at the mills up to the time the plaintiff left, and at the boarding house, and that it continued healthy there all the season.

The testimony was, that it was reported there was cholera at St. Johns, also in Portland near the city, also a few cases at Boar's Head, and that there was alarm and excitement at the mills on account of it, and that from seventy-five to eighty persons passed the mills daily fleeing from the city on account of the cholera, and were seen from the shore of the bay waiting for conveyance over.

At the request of the defendants' counsel the court allowed the following questions to be proposed to the jury, and answered by them, to wit:

Lakeman *v.* Pollard and als.

1. Was the plaintiff hired by the defendants to work for the sawing season of A. D. 1854 ?

*Ans. by the Jury.* " The jury disagree as to the first question as to a special contract."

2. Did the plaintiff leave the defendants' employ before the expiration of the season ?

Answered in the affirmative.

3. Did the plaintiff quit the defendants' employ without their leave or consent, before the expiration of the time for which he was hired ?

Answered in the affirmative.

4. Was the plaintiff, while in the defendants' employ, unsafe by reason of cholera or any other sickness, or would he have been unsafe if he had remained and worked to the .end of his contract ?

*Ans.* " The jury decide that he might have been considered unsafe at the time he left."

The next question was put at the suggestion of the judge presiding.

5. Would a man of ordinary care and prudence have been justified in leaving at the time the plaintiff did, under all the circumstances ?

Answered in the affirmative.

Defendants' counsel requested the judge presiding to instruct the jury, as follows :

1. That what is a reasonable excuse for non-fulfillment of a contract is simply a *question of law.*

2. And the prevalence of an epidemic sickness nearly in the vicinity, but no instance of which had occurred at the place where the contract has to be fulfilled, would not, in law, be a sufficient excuse for the non-fulfillment, in law.

The judge did not give the instructions in the words requested, but did instruct the jury that if they were satisfied that the work done by the plaintiff was performed under a special contract, and that the plaintiff did not fulfill his contract, but left the defendants' employ before the term he had hired for had expired, without the consent of the defendants,

he could not reeover, unless the plaintiff had satisfied them from the proof in the case that he had good and sufficient cause for so leaving, and that they would determine from the evidence in the case whether there was or not such a prevailing and dangerous epidemic, or sickness in the vicinity of the mill when the plaintiff left as to render it dangerous for him to remain at work there, and also that if the danger was such as to render it unsafe and unreasonable for men of ordinary care and common prudence to remain there, that danger would be a sufficient cause for leaving, and not fulfilling his contract.

The verdict was for the plaintiff.

*N. Abbott,* counsel for the plaintiff.

*C. P. Brown,* counsel for the defendant.

HATHAWAY, J. The plaintiff labored for the defendants at their mills in St. Johns, and by this action claims to recover his wages.

The defence is, that the labor was performed under a contract, on his part, to work for the defendants during the sawing season of 1854, which he did not fulfill.

The testimony of Bagley, Nute and Stone that "they were not hired by the season, but only to remain there as long as they pleased," could have no legitimate effect upon the rights of the parties in this suit, and was improperly admitted. That testimony was introduced by the plaintiff as tending to show that *he* was not hired for a specified time. But the jury found that he was so hired. Else they could not have found, as they did, specially, that " he quit the defendants' employ, without their leave or consent, before the expiration of the time for which he was hired." The defendants were not aggrieved by the admission of that testimony, for the special findings of the jury show that it produced no effect.

The plaintiff contends that he was excused from the performance of his contract, and justified in quitting when he

did, by reason of the alarm and danger occasioned by the prevalence of the cholera in the vicinity of the mills, and that he is entitled to a reasonable compensation for the labor performed. If the fulfillment of the plaintiff's contract became impossible by the act of God, the obligation to perform it was discharged. If he was prevented by sickness or similar inability he may recover for wha the did, on a *quantum meruit*. 1 Parsons on Contracts, 524.

The plaintiff was under no obligation to imperil his life by remaining at work in the vicinity of a prevailing epidemic so dangerous in its character that a man of ordinary care and prudence, in the exercise of those qualities, would have been justified in leaving by reason of it, nor does it make any difference that the men who remained there at work after the plaintiff left were healthy, and continued to be so. He could not *then* have had any certain knowledge of the extent of his danger. He might have been in imminent peril, or he might have been influenced by unreasonable apprehensions. He must, necessarily, have acted at his peril, under the guidance of his judgment.

The propriety of his conduct in leaving his work at that time must be determined by examining the state of facts as *then* existing. When the laborer has adequate cause to justify an omission to fulfill his contract, such omission cannot be regarded as his fault. Whether or not the plaintiff had such cause was a question of fact, to be determined by the jury, upon the evidence.

" Where there are conflicting proofs, or some necessary facts are to be inferred from others which are proved, then it is the province of the jury to decide the cause, under instructions from the judge, as to the principles of law which should govern them." Sherwood v. Maverick, 5 Maine R., 295.

The question was rightly submitted to the jury, and with appropriate instructions.

No question is presented by the exceptions concerning the rulings of the court upon the subject of damages, or the amount, if any, recoverable for wages.

A report of the whole evidence, *signed by* the presiding judge, as the law requires, has not been furnished to the court. Therefore the motion for a new trial cannot be entertained.*

> *Exceptions and motion overruled.*
> *Judgment on the verdict.*

TENNEY, C. J., and APPLETON, J., concurred.

GOODENOW, J., concurred in the result only.

MAY, J., concurred, remarking that the testimony of Bagley, Nute and Stone was admitted as contradictory of other witnesses introduced by the defendant, and not upon the main question; and for such purpose was clearly admissible.

---

* This, and the following case of Stanley v. Drinkwater, were entered in the Law Court in 1856, to be argued in writing, and were decided by the members who held the term for that year, although they were not argued till 1857.