# MATTIE E. McKAY, Plaintiff, *v.* JOSIAH BARNETT, AS TREASURER OF THE BOARD OF EDUCATION OF SALT LAKE CITY, UTAH, Defendant.

Contracts — How Construed. Particular Contract — Provisions Implied. Further of Particular Contract. Non-Performance — Of Possible Contract — When Excused — Preventive Act of One Party to Contract — Does Not Excuse Payment.

*Contracts — How Construed.*

In construing a contract, each of its provisions must be considered in connection with the others, and if possible, effect must be given to all.

*Particular Contract — Provisions Implied.*

A contract between the plaintiff and the Board of Education of Salt Lake City wherein among other things plaintiff bound herself " to give her entire time and best efforts in any of the schools of said city to which she might be assigned " for four weeks of five days each, in each month, from September 11, 1899, until June 1, 1900, or until the termination of the contract by the Board of Education for misconduct, etc., or for any other reason than those specially mentioned, on four weeks' notice, carries with it, by implication, that the Board of Education shall in case it failed to furnish plaintiff with employment as teacher, pay her the stipulated wages during the time mentioned or until said board terminated the contract as therein provided, and the arbitrary closing of the schools, by the Board of Education, during an epidemic of smallpox, although it may have been a wise precaution, did not release the plaintiff under the contract, or change the obligation of the board.

*Further of Particular Contract.*

> A stipulation, in a contract of employment, to pay plaintiff a certain wage, "for the time actually occupied in school," must be construed simply as an intention to prohibit plaintiff from drawing her salary during vacation or during the time she might be excusably absent or temporarily unable to discharge her duties, and not to apply to such time as the defendant might arbitrarily prevent plaintiff from performing her duties without discharging her under the contract.

*Non-Performance — Of Possible Contract — When Excused — Preventive Act of One Party to Contract — Does Not Excuse Payment.*

> Where a contract is to do acts which can be performed, nothing but the act of God or of a public enemy, or the interdiction of the law as a direct and sole cause of the failure, will excuse the performance; and where plaintiff is ready and willing to perform, but is prevented by act of defendant, plaintiff is entitled to her salary for the period during which she was ready to, but did not actually, perform her part of the contract, on account of the act of defendant.

(Decided March 28, 1900.)

Original application for a writ of mandamus to compel defendant as treasurer of the Board of Education of Salt Lake City to pay plaintiff a warrant issued to her for a certain period of sixteen days, during which time the schools of Salt Lake City were temporarily suspended on account of an epidemic of smallpox.    *Writ allowed.*

*Messrs. Bennett, Harkness, Howat, Sutherland, & Van Cott,* for plaintiff.

*Messrs. Richards & Varian,* for defendant.

STATEMENT OF FACTS.

In this case the plaintiff has made an original applica-

tion to this court for a writ of mandate to enforce the payment, by the defendant, Josiah Barnett, Treasurer of the Board of Education of Salt Lake City, of a warrant for $56.00 issued to said plaintiff by said board, the payment of which was refused by said treasurer.

The facts set out in the affidavit of plaintiff, and upon which she relies, are that on the 11th day of September, 1899, she, as party of the second part, and the said Board of Education as party of the first part, entered into a written contract containing, among others which have no bearing upon the contention between the parties, the following stipulations, to wit:

"That the party of the first part hereby employs the party of the second part to teach school in Salt Lake City, Utah, beginning September 11, 1899, and agrees to pay therefor at the rate of seventy ($70.00) dollars per month, of four weeks of five days each for the time actually occupied in school (legal holidays to be counted as school days); payment to be made within one week after the end of each school month.

"In consideration of said employment, said party of the second part hereby agrees to give her entire time and best efforts in any of the schools of said city to which she may be assigned, upon the terms and at the price above named, in accordance with, and subject to, such rules and regulations as have been made or may be made by said board, and subject to the control, direction, and guidance of the superintendent of schools of said city. * * *

"This contract may be terminated by the party of the first part at any time, without previous notice, for misconduct, insubordination, incompetence, or persistent violation of the rules of the board, of instructions, of the superintendent, or for any other reason, on four weeks' notice, but unless so terminated shall continue in force until June 1, 1900." * * *

21 Utah—16

That plaintiff entered upon the discharge of said contract, and has continuously performed her duties under the same; that on account of the prevalence of smallpox in said city, the Board of Education, without consulting the plaintiff, temporarily closed the public schools in said city, including the one in which the plaintiff was teaching, for a period of sixteen days in the months of January and February, 1900; that during the whole period of suspension the plaintiff held herself in readiness to perform her duties as teacher under said contract, whenever said schools should again open, and during the whole of said period was ready, willing, and able to perform her duties as such teacher, and would have done so had said schools not been temporarily closed; that said warrant was issued by said Board of Education to plaintiff as compensation covering the said period of sixteen days during which said schools were closed; that upon the presentation of said warrant, said treasurer refused to pay the same for the sole reason that during said sixteen days the schools had been closed and the plaintiff had not during that time rendered any services as teacher.

The foregoing facts were admitted by the answer of the defendant.

The answer, among other things not necessary to enumerate, also alleged "That at and prior to the time of making the orders and regulations by the Board of Health and Board of Education, as hereinafter stated, the contagious and infectious disease of smallpox was prevalent in the State, and epidemic in certain counties and localities, and was prevalent in the city of Salt Lake, to such a degree that it was deemed necessary to enforce the most stringent precautionary measures to protect the health of the people; that it was reasonably apprehended that said disease might become epidemic in the city of

Salt Lake ; that on the 4th day of January, 1900, the local Board of Health for the city of Salt Lake adopted and sent to the Board of Education for said city, a resolution recommending that said Board of Education close the public schools in said city for a period of thirty days; that thereupon, the said schools being then in vacation, the said Board of Education extended the vacation until the 15th day of January, 1900 ; that afterward, on the 11th day of January, 1900, the city Board of Health advised the Board of Education that it would be safe to open the schools in said city, provided that none be admitted thereto, either as teacher or pupil, who had not been vaccinated, and advised the said Board of Education to thenceforth refuse to admit unvaccinated persons to the public schools ; that afterward, on the 15th day of January, 1900, the said local Board of Health, in the exercise of its best judgment and discretion, and for the single purpose of protecting the health of the public and of the teachers and pupils of the public schools, adopted and certified to the Board of Education, a resolution reciting the existence of the disease of smallpox in the city, and the fact that numbers of the people might have been exposed to the same, and directed the said Board of Education to enforce the rule relative to vaccination, as above stated ; that in all the premises the said Board of Education acted in obedience to and under the authority of the said Board of Health, which had jurisdiction by law in the premises ; that the amount of money in the treasury of said board or in any wise subject to its disposal for school purposes, during the present school year, including said sum of $9,200.00, is and will be insufficient to maintain and keep open the public schools of said city for the ordinary scholastic year of nine months, or thirty-six weeks, and in the event of the sum last afore-

said being applied to the payment of the other teachers for the time during which no service was rendered in the schools, it will become necessary to close all the schools about the middle of May next, some ten school days before the schools otherwise would be closed.

A demurrer was interposed to the answer of the defendant on the ground that the same does not state facts sufficient to constitute a defense.

BASKIN, J.

It is conceded that the Board of Education had authority to make said contract.

1. The first point of contention is, whether the plaintiff, under said contract, is entitled to compensation for the period of sixteen days during which the schools were closed, and during which she was not actually occupied in teaching.

In construing the contract each of its provisions must be considered in connection with the others, and if possible effect must be given to all. A construction which entirely neutralizes one provision should not be adopted, if the contract is susceptible of another which gives effect to all of its provisions.

By the terms of the contract the plaintiff bound herself "to give her entire time and best efforts in any of the schools of said city to which she might be assigned" for four weeks of five days each, in each month from September 11, 1899, until June 1, 1900, or until the termination of the contract by the Board of Education for misconduct, etc., or for any other reason than those specially mentioned, on four weeks' notice. From the foregoing provisions the following provisions are clearly implied, and are as apparent as if they had been expressed in direct terms, to wit: that the Board of Education shall

in case it failed to furnish plaintiff with employment as teacher, pay her the stipulated wages during the time mentioned, or until said board terminated the contract as therein provided. Closing the schools was not therefore a breach of the contract, and did not release the plaintiff from her obligations under the same. Her rights were in no way affected by closing the schools, nor was the obligation of the Board of Education changed in the least. The only infraction of plaintiff's rights in the premises, was the refusal to pay said warrant.

It is claimed by counsel for the defendant, that by the following terms of the contract, to wit : " For the time actually occupied in school," the right of the plaintiff is limited to that time exclusively, and as she was not actually occupied in school during the period of the sixteen days that the schools were closed, the treasurer properly refused to pay said warrant.

Such a construction of that clause would neutralize the clearly implied provisions of the contract before mentioned and permit the Board of Education to close the schools as often and for as long periods of time as they might choose to do so, during the life of the contract, without the consent of the plaintiff, and without compensating her for the loss of employment, notwithstanding she is bound to serve for the whole period mentioned in the contract, or until it is terminated by the board in the manner therein specified, and keep herself in readiness to perform her duties as teacher whenever required to do so by the board. During such periods the plaintiff could not, without violating the contract, enter into any other permanent engagements.

Such a construction would make the contract unreasonable and oppressive.

We are of the opinion that the parties did not intend

that said clause should have the effect contended for by counsel for defendant. It was simply intended to prohibit the plaintiff from drawing her salary, during any vacation which the board might grant her, or during the time which she might, from sickness or some other excusable cause, be unable temporarily, to discharge her duties when the schools were in session.

In the case of *Charleston School Township* v. *Hay*, 74 Ind., 127, the contract was to pay the teacher for the services actually rendered, and in that case, as in the case at bar, it was contended that the teacher's right to compensation was confined to the days in which the school was actually taught by her, but the court held otherwise, and permitted her to recover for the time the school was closed during the term.

2. The second point raised is, whether or not the action of the local board of health in the premises relieved the board of education from its obligation under the contract to pay the plaintiff her salary for the period that the schools were closed.

If the local board of health had possessed, at the time said contract was entered into, lawful authority to order the schools closed whenever smallpox should become prevalent, and continued to possess such authority up to the time when it acted in the premises, and also had lawful authority to enforce such an order, then the defendant in that event might, with much better show of reason, insist that the parties contracted in view of such authority, and contemplated if a smallpox epidemic should occur during the life of the contract, the Board of Education might be legally compelled against its will and without fault on its part, to close the schools, and that during the time the schools were so closed, under such authority, no salary should be paid to the plaintiff. But the local board of health had no such authority at the time the con-

tract was made, and have not since had any such authority.

3. The third point is whether the closing of the schools by the Board of Education on account of the prevalence of smallpox, released the board from its obligation to pay the plaintiff her salary during the time the schools were closed.

In the case of *Jones* v. *The United States*, 96 U. S., 29, the court said: "Impossible conditions can not be performed; and if a person contracts to do what at the time is absolutely impossible, the contract will not bind him, because no man can be obliged to perform an impossibility; but where the contract is to do a thing which is possible in itself, the performance is not excused by the occurrence of an inevitable accident or other contingency, although it was not foreseen by the party, nor was within his control. Chitty, Contr. 663; *Jervis* v. *Tompkinson*, 1 H. & N., 208."

Where the contract is to do acts which can be performed, nothing but the act of God or of a public enemy, or the interdiction of the law as a direct and sole cause of the failure, will excuse the performance. This principle is elementary.

The schools were not closed for any such cause by the Board of Education. While the closing of the schools may have been wise and prudent, the closing was not due to any cause which made it impossible for the schools to keep open.

The Board of Education might have stipulated that the plaintiff should have no compensation during the time the school should be closed on account of the prevalence of contagious diseases, but not having done so it can not deny the compensation during such time on account of the prevalence of smallpox. *Libby* v. *Inhabitants of Douglass*, 55 N. E., 808; *Gear, et al.*, v. *Gray*, 73 N. E., 1059; *Dewey* v. *School District*, 5 N. W., 646.

There were some other points of minor importance

raised in the argument which we do not deem it necessary to comment upon.

It is ordered that the writ of mandate be issued, commanding Josiah Barnett, Treasurer of the Board of Education, to pay to the plaintiff, out of the funds in his hands as such treasurer, upon the presentation of the warrant for $56, issued by said board to the plaintiff, and which is referred to in the affidavit of plaintiff, and in the answer of the defendant, and that the defendant pay the costs of this proceeding, taxed at ———— dollars.

BARTCH, C. J., concurs in the result.

I concur in the opinion of Mr. Justice Baskin, except as to that part having reference to the power of the board to close the schools during the smallpox epidemic. As to that part of the opinion, I withhold my assent.

MINER, J.