WILLIAM A. SANDRY, Respondent, v. BROOKLYN SCHOOL DISTRICT NO. 78 OF WILLIAMS COUNTY, NORTH DAKOTA, a Municipal Corporation, Appellant.

(15 A.L.R. 719, 182 N. W. 689.)

**Schools and school districts — driver held not entitled to recover under contract for transportation of pupils, where school closed.**

In an action brought by a driver to recover the compensation stipulated in a driver's contract with a school district for the transportation of teachers and pupils to and from a consolidated school, where the plaintiff seeks to recover upon his own contract and upon claims arising under three similar contracts of which he is assignee, for a period of thirteen weeks during which the school was closed on account of an epidemic of influenza, it is *held:*

1. The driver's contract is not so far analogous to a teacher's contract that the driver, upon showing readiness to perform during a period when the school is closed on account of an epidemic, may recover the agreed compensation as upon a full performance.

**Schools and school districts — contract for transportation of teachers and pupils is discharged by impossibility of performance.**

2. The driver's contract is a contract for personal service, and if, without fault of either party, its performance is rendered practically impossible for a period of time, the party thus unable to give or receive performance during the period is not liable for breach of the contract.

**Contracts — service actually rendered held not "substantial performance" of entire contract.**

3. Where compensation is agreed upon as an equivalent for full performance, and where there is excusable nonperformance for an extended period, the service actually rendered under the contract is not a substantial performance of the entire contract such as will enable the plaintiff to recover the full compensation.

Opinion filed April 4, 1921.

Appeal from an order of the District Court of Williams County, *Leighton,* J.

Reversed and dismissed.

NOTE.—That there seems to be a distinction made between the rights of a teacher to compensation under his contract and that of one employed to transport pupils while the school is closed on account of epidemic, will be seen by an examination of cases collated in note in 15 A.L.R. 725, on interruption of school session as affecting contract other than with teacher.

*Wm. G. Owens,* for appellant.

School district officers have and may exercise only such powers as are expressly or impliedly granted by statute. Kretchmer v. School Dist. 34 N. D. 412; Pronovost v. School Directors, 36 N. D. 288.

"It is immaterial what the parties denominate a contract, as its terms and conditions, rather than the name applied to it, must govern." State ex rel. v. Hall, 25 N. D. 85.

"When a contract is reduced to writing, the intention of the parties is to be ascertained from writing alone, if possible, subject, however, to other provisions of this article." Harney v. Wirtz, 30 N. D. 292, 152 N. W. 803; Comp. Laws, §§ 5599, 5901–5908.

*Geo. A. Gilmore,* for respondent.

Contracts must be interpreted to give effect to the mutual intention of the parties. Comp. Laws, § 5896.

The intention of the parties must be ascertained from writing alone, if possible. Comp. Laws, § 5899.

"No deduction can be made from a teacher's salary when a school is closed during the term on account of epidemics, destruction of building, or holidays, unless special provision is made in the contract which will allow such deduction to be made. Libby v. Douglas, 175 Mass. 128; McKay v. Barnett (Utah) 50 L.R.A. 371.

All that is necessary to earn and collect such wages is that the person hold himself in readiness at all times to perform his part of the contract. Randolph v. Sanders (Tex.) 54 S. W. 621; Dewey v. Union School Dist. 5 N. W. 646; 35 Cyc. 1098, 1099.

BIRDZELL, J. This is an appeal from a judgment for $775 in an action upon four transportation contracts. The plaintiff brought action in his own right upon one of these contracts and as an assignee of three others. The contracts cover the conveyance of the teachers and pupils of the defendant school district for the period of nine months beginning September 23, 1918. They prescribe the routes of travel and the compensation of each driver. The school was open two weeks in September and October of 1918, when it was closed on account of the epidemic of influenza, and did not reopen until January 3, 1919. The drivers performed under the contracts during the time the school was open, and were paid for their services according to the

contract rate. They were not paid, however, for the period during which the school was closed. This action is brought to recover the stipulated compensation as upon a performance of the contract during the thirteen weeks the school was closed.

The trial court instructed the jury that under the written contract the drivers would be entitled to recover the full amount stipulated as compensation, if they at all times held themselves in readiness to perform, and were prevented from performing by the action of the board in closing the school; that it would make no difference in this respect whether the school was closed by the order of the board of health on account of the epidemic; that the method of avoiding liability upon the contract for this period would have been by cancelation, and that the contract had not been canceled. The court also left it to the jury to determine whether or not, under the evidence, the parties themselves had placed a contrary interpretation upon the contract. This instruction was occasioned by evidence to the effect that at other times when the school had been closed for short periods the board, in compensating the drivers, deducted for the days the school was so closed. There was evidence that the drivers had received compensation on this basis without objection, but it was explained that the matter was of too trivial a nature to warrant any attention being paid to it.

In our opinion this case turns upon the legal interpretation of the contracts. They are substantially the same, being upon printed forms. The following may be taken typical:

"Witnesseth.

"1. That the said William A. Sandry is to provide the safe conveyance of such teachers and pupils of the school in Brooklyn school district as live on or near the route designated in this contract, to the school in said school district by 8:45 A. M. of every school day, and back to their homes or places designated herein, being ready to leave the school by 4:10 P. M. of every school day, during the school term of (9) nine months commencing on the 23d day of September, 1918.

"2. That the said William A. Sandry shall furnish all necessary blankets and robes during inclement weather for the sufficient comfort of the persons conveyed.

"3. That it shall be the duty of the said William A. Sandry to pre-

serve orderly conduct on the part of the children while in his care to or from the school, and to report all misconduct on the part of such children to the teacher or principal.

"4. That the said William A. Sandry hereby expressly agrees to exercise great care in performing his duties as driver, and in preventing accidents to the children while in his care.

"5. That in case the said William A. Sandry should wish to engage any other person than himself to act as driver, written permission must first be granted by the president of the school board, but the said William A. Sandry is still responsible to the school board for the performance of this agreement.

"6. That the route of travel to and from the school shall be as follows (unless a deviation from this route shall be granted by the president of the school board): For route No. two (2) between December 1st and April 1st to arrive at schoolhouse at 9:20 A. M. and be ready to leave the schoolhouse at 3:45 P. M.

"7. That for these services truly rendered the school board of said Brooklyn school district, Williams county, North Dakota, agrees to pay the said William A. Sandry at the expiration of each school month of service the sum of sixty-five and no/100 ($65) dollars:

"Provided, That the school board reserves the right to withhold such part of the month's wages as in their opinion is equitable in case the services do not meet this agreement.

"Provided, Further, That the school board may at any time cancel this contract in case of the nonperformance of this agreement by the driver, or in case of the discontinuance of school."

The plaintiff regards this as a contract for personal services, and claims for each the same legal effect as the ordinary teacher's contract. The authorities relied upon to support recovery are principally those dealing with teachers' contracts where recovery has been allowed in circumstances similar to those presented here, on the ground that the teacher's services are engaged for a stipulated term. It is held that where, during a portion of the term when the school was closed without the fault of the teacher, he or she necessarily remained in an attitude of readiness to perform, the compensation had, in effect, been earned.

Under the statutes of this state, teacher's contracts are required to

contain an express stipulation against compensation in case the school be discontinued for the reasons stated in the statute. Comp. Laws 1913, § 1189. The statute has not assigned prevalence of an epidemic as a reason for discontinuance. From the fact that the law requires this provision to be inserted, it may fairly be implied that the district agrees to pay the teacher the stipulated salary during the term of the engagement if the schools are temporarily closed for some such cause as an epidemic. Other statutory provisions require the teacher to be compensated for legal holidays (Comp. Laws 1913, § 1382) and for periods of attendance upon teachers' institutes. Comp. Laws 1913, § 1385. A teacher is required to have certain qualifications, and to have a certificate as a prerequisite to a right to receive compensation. Comp. Laws 1913, § 1382. The teacher is generally a person coming from outside the district, and the duties involved in the performance of the contract effectually preclude other employment for the period. In these circumstances it is a fair inference that the parties intend that the teacher should be compensated during periods of temporary suspension while he or she is held in a position of readiness to perform. Libby v. Douglas, 175 Mass. 128, 55 N. E. 808; Dewey v. Union School Dist. 43 Mich. 480, 38 Am. Rep. 206, 5 N. W. 646; Carthage v. Gray, 10 Ind. App. 428, 37 N. E. 1059; Randolph v. Sanders, 22 Tex. Civ. App. 331, 54 S. W. 621; McKay v. Barnett, 21 Utah, 239, 50 L.R.A. 371, 60 Pac. 1100; 3 Williston, Contr. § 1958; 3 Page, Contr. § 1376.

Is the driver's contract of the same character? We are of the opinion that it is not. No specific qualifications are prescribed. The contract is generally entered into between the district and some person within it. Its performance involves little or no preliminary preparation. The driver is not required to furnish the bus or other vehicle of conveyance. The performance does not require the whole time of the driver, and, while personal performance is contracted for, it clearly appears from the evidence in this case that the school district readily paid for the service, though the work of driving was delegated to suit the convenience of the driver. The dissimilarity of these two contracts gives rise to widely different points of view in construing them for the purpose of ascertaining the true intention of the parties. We think it quite clear that the holding in readiness required of the driver during

a period of prolonged suspension involves so little inconvenience on his part that it cannot reasonably be said to be the intention of the contracting parties that he should be paid for such period. In these circumstances the ordinary rule applicable to personal-service contracts applies. They are subject to the implied condition, on the one side, of ability to perform, and, on the other, of ability to receive performance. Either party is excused if, without his fault, performance for a period becomes impossible. Such impossibility may arise upon the sickness or death of either party, or the inability of one party to give or receive performance, occasioned by the prevalence of an epidemic. Lakeman v. Pollard, 43 Me. 463, 69 Am. Dec. 77.

The stipulated compensation is the equivalent of full performance, and where nonperformance for an extended period is excused on either side by reason of practical impossibility, the service actually rendered is not such a substantial performance as to entitle the plaintiff to full compensation. See Littell v. Webster County, 152 Iowa, 206, 131 N. W. 691, 132 N. W. 426; 2 Williston, Contr. § 838. See also Lacy v. Getman, 119 N. Y. 109, 6 L.R.A. 728, 16 Am. St. Rep. 80. As we view the contracts in the instant case, the situation of the parties is in no respect different from what it would have been had they, in January, 1919, upon the reopening of the school, rescinded the contracts made in September and entered into new agreements for the remainder of the term. In that event we do not think it could have been reasonably claimed by the plaintiff that the actual conveyance of the pupils for two weeks under these contracts was a substantial performance for fourteen or fifteen weeks.

Being of the opinion that the contracts in question must be construed as above indicated, it follows that the plaintiff may not recover the agreed compensation for the period during which the school was closed. The judgment is reversed and the action dismissed.

ROBINSON, Ch. J., and CHRISTIANSON, J., concur.

ROBINSON, Ch. J. (concurring). This is an appeal from a judgment on a verdict for $775. The plaintiff is one of four persons who made similar contracts to drive a school conveyance for the school year

commencing in September, 1918, to convey teachers and children to and from the school. The plaintiff sues for a breach of his contract and for a breach of the other contracts, claiming under an assignment from the other drivers. The complaint avers that the plaintiff and the other drivers were duly paid for their services during the first two weeks, from September 23 to October 5, 1918, and from January 6 to the end of the school year. But for an interim of thirteen weeks, from October 7, 1918, to January 3, 1919, during which time the school was closed and no services rendered, the defendant refused to pay. The complaint does not aver that during said thirteen weeks the drivers performed any services or did a single thing under the contract.

As the record shows beyond dispute, the drivers were fully paid for all services actually rendered, but that they were not paid for the thirteen school weeks during which the school was closed and during which time they claimed to have stood in watchful waiting for the school to open. As shown by exhibit A and the oral testimony, the school was closed pursuant to an order promulgated by the county board of health. The order directs the school board to close all schools and places of public amusement, saying: "This is not only a board of health measure, but it is the substance of a telegram received by the state board of health from the Surgeon-General at Washington. It is therefore a war measure." The court will take judicial notice of the fact that the flu was a very infectious and fatal disease, and that it prevailed to an alarming extent over the state and the nation. The order was fully authorized; the closing of the school was compulsory. Indeed, it was an act of God, and the drivers had due notice of the closing as well as the opening of the school. There was no occasion for any watchful waiting. When the time came for the opening of the school, the drivers were notified and resumed the work and accepted their monthly pay without protest. As the answer avers, during the thirteen weeks the drivers rendered no services whatever. The school was closed by order of the county board of health and because of the prevalence of the flu. The defendant school district was not responsible for the epidemic or the closing of the school. "No man is responsible for that which no man can control." Comp. Laws, § 7260. And, except as given by statute, the school board had no power to contract for the conveying of pupils to and from the school. The board had no power to

contract for the payment of drivers at a time when the school was closed and when the drivers could not possibly render any services. Hence, on the undisputed facts, the action should be dismissed.

But the court instructed the jury that if the drivers at all times held themselves in readiness to perform under the terms of the contract, and were prevented from so doing by reason of the action of the board, then they were entitled to recover the full amount claimed in the complaint, $775, and that it made no difference that the school was closed by order of the board of health on account of the epidemic. The instruction is clearly erroneous. The closing of the school was by compulsion and by act of God, and not by any action of the defendant. If the closing was rightful, as it was, the defendant was not liable. If the closing was wrongful, then the district would be liable for a breach of its contract. However, the instruction was clearly erroneous. It holds, in effect, that when a contracting party holds himself in readiness to perform a contract, it is the same as performance. Under such a rule a person contracting to build a house for $5,000 might recover the contract price without doing a thing, if he only held himself in readiness to perform and the other party forbade performance. But such is not the law. If the board wrongfully closed the school, if it wrongfully prevented the drivers from performing the services under the contract, then the statute gives the measure of damages thus: "The amount that will compensate the party aggrieved for all loss proximately caused by the breach of the contract, or which in the ordinary course of things would be liable to result therefrom." Comp. Laws, § 7146. And "damages must in all cases be reasonable." § 7183. In this case plaintiff sues to recover for the breach of contract, and not for services actually rendered. He sues to recover on each of the four contracts for thirteen weeks of idleness. He wants pay for fifty-two weeks or one year of doing nothing. Of course that is not reasonable; it is grossly unconscionable. It seems like an attempt to hold up and rob the defendant of $775 under the forms and technicalities of the law. If the defendant had legal capacity to hire the drivers to do nothing for thirteen weeks and then wrongfully discharged them and prevented the performance of the contract, the liability is the same as that of a farmer hiring help to work on a farm and discharging the help before the time. In all such cases the liability is

for the proximate loss. If a man is hired to serve for a year, and is at once recalled or discharged without cause, his proximate loss is the difference between the contract wage and that which he may earn during the year. He cannot pass a year in idleness and collect for it the same as if he had been faithfully at work.

Then there is another rule that a contract must be binding on both parties, or neither is bound. If the drivers were not legally bound to serve, and if they had a right to jump the contract, the school district had the same right, and under the statute, if constitutional, any person, whether singly or in concert, may at any time terminate any relation of employment or labor, and even persuade others to do the same. Laws 1919, chap. 171. And it is generally known that as a rule employees no longer consider contracts for services or labor binding on them. They feel free to jump and disregard any such contract. In this case the question is: Did the school board make with the drivers a valid and binding contract to pay them for services during the thirteen weeks of idleness whether school kept or not, and to pay each of them for thirteen weeks of idleness and doing nothing while the school was closed without any fault of the school board? As I maintain, the school board made no such contract. It had no legal right to make it. The school was closed by compulsion, and no man is responsible for that which no man can control. Comp. Laws, § 7260. The drivers have had pay for their work, and this court should not aid them in holding up the school district. Hence the action should be dismissed.

BRONSON, J. (dissenting). The opinion of Justice Birdzell treats the contract involved as continuing for the period prescribed. Right of recovery is denied because of the failure of the drivers to substantially perform the contract during the period of time that the school was closed.

In this case no breach of the contract on the part of the drivers is presumed or proved. Confessedly, the failure of the drivers to perform the contract services during the time that the school was closed is due entirely to the action of the defendant. Whatever breach of the contract occurred was the act of the defendant. The case was tried and submitted upon the theory that the drivers were entitled to recover, if at all, the contract rate stipulated. In this regard, I am of the

opinion that there was error.  The record justified the finding of the jury that the closing of the school operated as a breach of the drivers' contracts.  Upon the holding in the opinion referred to, the breach of the contract by the defendant leaves the drivers without right to recover the detriment, if any, they have suffered.  In this case the statutory rule permitting the party aggrieved to recover the detriment proximately caused through the breach of a contract should be applied. Comp. Laws 1913, § 7146.  See McLean v. News Pub. Co. 21 N. D. 89, 129 N. W. 93, and note in 6 L.R.A.(N.S.) 94.  The judgment should be reversed and a new trial ordered.

GRACE, J.  (dissenting).  The contract in this case was for a definite period of time.  All the rights and duties of the parties were definitely specified in the contract.  The evidence warranted the finding by the jury that the plaintiffs had substantially performed their contracts.  There was no evidence to show to the contrary, nor was there any evidence showing that the defendants were entitled to any reduction from the full contract price, by reason of having performed other services for other persons.

If there were any such evidence, the jury passed upon the same and disposed of it by its verdict in favor of plaintiff.  Their verdict is conclusive in this case on this court, on the questions submitted to them, which were all questions of fact in the case.

It seems to us the construction placed by the majority upon the contract is such that a contract of this character would be of little force or effect; and, as it appears to my mind, the court, by its decision, permits the impairment of the contract.

It was by no means a one-sided contract.  The amount which the plaintiffs were paid for performing the service specified in the contract was a very small sum per month.  We may draw on our common knowledge of the surrounding condition to demonstrate this.

For instance, the time of commencement of the performance of the contract was in the latter part of September, 1918.  From that time until about the first part of November, at least, any of the plaintiffs could have taken his team, and, in all probability, for the use of the team and himself, gotten $10 per day threshing.

Then, commencing again on, say, the first day of April, 1919, and

from that time onward until the time specified as the time of the termination of the contract, certainly a man and team would be worth several times as much per day in the field at farm work, as they would receive for performing the service specified in the contract.

Again, it may be taken into consideration that, during the winter months, plowing back and forth through the snow, and delivering the children, and redelivering them at their homes, would be no easy task.

In the state of the evidence at the close of the case, the trial court could do nothing less than give the instruction which it gave. We do not regard the analysis of the majority opinion, which endeavors to distinguish between this contract and a teacher's contract, as at all correct. Both are contracts, and the principles of law which are applicable to written contracts, which are wholly complete, are as applicable to one as to the other, in the circumstances of this case.