RAYMOND K. SULLIVAN, administrator, *vs.* BOSTON CONSOLIDATED GAS COMPANY.

Suffolk.   April 4, 1944. — June 5, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & WILKINS, JJ.

*Nuisance.   Gas Company.   Way,* Public: nuisance.

At the trial of an action by an administrator to recover for personal injuries sustained by his intestate and alleged to have been caused by a fall due to a nuisance created by the defendant in a public sidewalk, where there was no testimony from any eyewitness to the fall, certain evidence introduced by the plaintiff of various statements made by his intestate to witnesses as to the place of his fall, and testimony of a witness as to seeing a man being assisted to his feet in the vicinity of the alleged nuisance in the same month as the intestate's accident, were insufficient to prove that the intestate fell at the place of and in consequence of the alleged nuisance.

TORT.   Writ in the Superior Court dated April 29, 1942. The case was tried before *Leary*, J.

*C. C. Petersen*, for the defendant.

*T. J. Driscoll*, (*J. H. Coakley* with him,) for the plaintiff.

WILKINS, J.   The plaintiff, as administrator of the estate of William V. Kirby, brings an action of tort to recover for personal injuries sustained by the plaintiff's intestate on April 26, 1940, by reason of a fall into a hole or depression in the sidewalk on Templeton Street, a public way in Boston. The jury found for the plaintiff.   The only question presented is whether there was error in denying the defendant's motion for a directed verdict.

The evidence showed that the defendant on March 21, 1940, as a result of a fire in a lamp post, made an opening in the sidewalk in front of 131 Templeton Street, and closed it on March 25.   This was an old brick sidewalk six or seven feet wide with a granite edgestone; and near the curb in front and a little to the left of the center of the house numbered 131 Templeton Street was a gaslight post of the defendant.   This post, according to a sketch on the permit from the city introduced in evidence by the plaintiff, was one hundred sixty-seven feet from the corner of Adams Street.   This sketch showed one rectangular opening measuring in width three feet and in length two and one half feet on the outer half of the sidewalk and further extending four and three tenths additional feet across the curbing out into the street.   This is confirmed by a photograph taken after the accident which shows work done by the defendant on the side of the lamp post away from Adams Street.   There was no evidence that the defendant changed the surface of the sidewalk at any other point.   On the side of the house toward Adams Street there was a driveway, and beyond the driveway extending to Adams Street was a vacant lot bordered along its entire frontage on Templeton Street by a wooden picket fence.   The fence began at a point about twenty-five feet beyond the lamp post.   Near the curbing of the sidewalk in front of the vacant lot on Templeton Street were two wooden poles for carrying wires, one a few feet from Adams Street and the other nearer the other end of the

lot. There was testimony from a Mrs. Riley from which it could have been found that the defendant did not put the sidewalk in as good repair as it was when opened, and that it failed to do so within a reasonable time. Accordingly, the defendant could have been found to be "guilty of a nuisance." G. L. (Ter. Ed.) c. 164, § 70. *Bern* v. *Boston Consolidated Gas Co.* 310 Mass. 651.

There was no testimony from any eyewitness to the fall, and the serious question is whether there was evidence from which it could have been found that the deceased fell at the place where the defendant opened the sidewalk. The plaintiff himself did not provide such testimony. He testified that some time in April, 1940, he talked at a hospital with the deceased, who was his uncle. The latter "informed him that he fell where some bricks had been removed while going up Templeton Street, Dorchester, on his way to work around 8 A.M. on April 26, 1940; that some bricks had been removed from the said sidewalk and he said he fell against the fence at the vacant lot, the last lot on Templeton Street on the right going towards Adams Street; just beyond the last house; that he said he fell at the vacant lot; that No. 131 Templeton Street is the last house on the street just before you come to the vacant lot; that the house had a frontage of fifteen or twenty feet and set back from the sidewalk; . . . that the thing that was impressed on his mind was that the intestate fell while going up Templeton Street at or near the fence that surrounds the vacant lot or parallel with the boundary line of the vacant lot on Templeton Street." "Going up Templeton Street" meant proceeding in the direction of Adams Street. The evidence showed that the deceased lived at 97 Templeton Street, and was a linotype operator. He suffered a broken arm, and was never able to return to his employment after the accident. He died about nine months later. It could have been found that the deceased following his fall did take a bus but after going part way was forced to return to his home.

Unless the plaintiff's testimony is contradicted by other more favorable evidence he is bound by it. *Duff* v. *Webster*,

315 Mass. 102, 103. But two witnesses gave testimony
which must be considered in this connection.

A Dr. Ahern, called as a witness by the plaintiff, testified
that he recalled seeing the deceased at his house on the
morning of April 26, 1940; "that he gave a history of fall-
ing on a brick sidewalk on Templeton Street; he said the
place was in front of 131 Templeton Street the last house
there." On cross-examination he testified "that it was his
recollection that the deceased told him that the accident
occurred in front of 131 Templeton Street; that he made
the statement that was his best recollection of some con-
versation he had with his patient; that as a result of con-
versation with the deceased he knew the spot; that he was
very familiar with the location; that he had been on the
street and in the house a great many times; that he is
familiar with the lot of land that runs up to Adams Street
with a fence around it; that Kirby told him that when he
fell he fell against the fence there; that the fence begins at
131 Templeton Street and runs to the end of the street;
that he knew the number of the house as being 131 on the
street; that what the deceased really told him was that it
happened somewhere between the house 131 and Adams
Street along side of where there was a fence; . . . that he
stated he fell against the fence; that he didn't remember
about the fence, just the falling; . . . that he knew the place
was down about the fence there; right opposite the fence;
that he said when he fell he went against that fence; . . .
that he connected the place by two poles; . . . that he under-
stood he fell somewhere in between those poles, (indicating)
that there are two great big spots broken and some bricks
out at the corner; . . . that he said he fell near the second
post up; that that post is also opposite the fence; just
down a little bit below the end of that fence there is a gas
lamp post; that he told me he fell on the broken piece; that
he . . . told him . . . that at the time of falling he came
against the fence; that he told him it happened at a place
opposite the fence or along side of the fence in that vicinity
and between those two posts; that it happened near the
fence between the two posts, a great large space went almost

to the curb there; . . . I do not remember whether he mentioned the fence to me; that I fix it by the posts not by the fence; . . . that deceased told him at the time that he fell between those two posts and that is right in that location." On redirect examination he testified that he walked down Templeton Street; "that he saw bricks out here (indicating the corner of Adams Street) across the sidewalk and also saw bricks out here (indicating between the fence and the lamp post in front of No. 131)." On recross-examination he testified that after seeing the deceased, who was in the house waiting for the ambulance and told him where the defect was, he walked back; that "the whole sidewalk was in bad shape, that witness knew the spot because deceased asked him to go down and see it when he left; that he was not vague about it, not on that spot; that he knew the spot."

We think that this testimony fails to show any causal relation between the repairs made by the defendant near the lamp post and the deceased's fall. It is not necessary to determine whether this testimony shows a final and definite adherence to a statement that the place of the fall was between the two poles, and so comes within the principle of *Sullivan* v. *Boston Elevated Railway*, 224 Mass. 405, 406. It is enough to say that "a great large space [which] went almost to the curb," which was obviously near the fence and the "second post," is not a description of the area by the lamp post opened by the defendant and which on the evidence was adjacent to the curb in both sidewalk and street. "In order to maintain a personal action to recover damages for a public nuisance, the plaintiff must show that his particular loss or damage was caused by the nuisance, just as in case of any other tort." *Stone* v. *Boston & Albany Railroad*, 171 Mass. 536, 544. *Osborne* v. *Boston Consolidated Gas Co.* 296 Mass. 441, 444. *Jones* v. *Hayden*, 310 Mass. 90, 94.

A Mrs. Riley, called as a witness by the plaintiff, testified that she lived at 126 Templeton Street and had lived in the neighborhood for about fifteen years; that "sometime in April, 1940, around eight o'clock in the morning" she

"happened to look across the street and . . . [saw] this man being assisted to his feet from a fall in front of 131"; that that afternoon she saw the ambulance go down the street; that she had seen the defendant repairing the lamp post; "that she saw the bricks after they got through working there, some were down and some were not; that at the spot where she saw the man being picked up there had been bricks out"; "that she did not exactly see the man on the sidewalk"; that she did not know the man and never met him since; "that the man being assisted was an average working man, the man had been going to work; that she could not tell what became of the man" who was injured; that the two men went up Templeton Street toward Adams Street; that the man seemed hurt; that she assumed the man was on his way to work because he was going toward the bus.  It is entirely speculative or conjectural whether this testimony concerns a fall by the deceased or a fall by anyone on April 26, 1940.  See *Jabbour* v. *Central Construction Co.* 238 Mass. 453, 455; *Withington* v. *Rome*, 258 Mass. 188, 190.  The location of the place-of this man's fall, if he fell, is unlike that given by Dr. Ahern or any other witness in the case.  The testimony of Mrs. Riley, taken alone or in connection with all the other evidence, not only relates at most to an unexplained fall, *Brown* v. *Bangs*, 306 Mass. 551, *Connolly* v. *Boston Elevated Railway*, 309 Mass. 177, but it relates to an unexplained fall of an unknown person who on the evidence could not be found to be the deceased.

The case of *Bennett* v. *Jordan Marsh Co.* 216 Mass. 550, 551, 552, where there was definite evidence from the plaintiff as to the place of the accident, is not an authority for the plaintiff.  See *Sawyer* v. *Atherley*, 312 Mass. 596.

The motion for a directed verdict should have been granted.  The entry will be

*Exceptions sustained.*
*Judgment for the defendant.*