CITY OF BANGOR *vs.* INHABITANTS OF ORNEVILLE.

Penobscot.    Opinion April 24, 1897.

*Insane Paupers.    Towns.    Record.    Amendment.*

*R. S., c. 143, §§ 13, 19, 21, 34.*

In an action of assumpsit, under R. S., c. 143, to recover for sums paid by plaintiff town for the support of an insane pauper at the insane hospital, it was admitted that the insane person had a pauper settlement in the defendant town. Two points were urged in defense, viz: want of proper notice, and failure to keep a proper record of the proceedings respecting the examination and commitment of the pauper.

*Held;* that a notice sent to the overseers of the poor of the defendant town containing proper facts, from the "office of the overseers of the poor" of Bangor, by "L. C. Davis, overseer of the poor and secretary," is sufficient; and thereby the defendant town becomes charged for all sums paid by the plaintiff town within three months prior, and two years after, the cause of action accrued.

The record of the proceedings, attending the examination and commitment, will be held valid, although not extended for nearly two years after the commitment, it appearing that it was made during the municipal year immediately succeeding the commitment and by the clerk, who continued to hold his office by re-election.

It is established in New England that a clerk, who has made an erroneous or incomplete record while in office or after re-election, may complete such records; and where he continues in office for several years, he may amend former records notwithstanding intervening re-elections.

A record of such proceedings that omits to state, according to the statute, that the two practicing physicians who made the medical examination were also "respectable" will be held sufficient when it appears to contain a statement of all facts requisite to establish the regularity of the proceedings and a legal commitment,—no evidence being adduced that the two physicians, who signed the certificate, were not in fact respectable. In such cases the

court is aided by the presumption in regard to public officers, expressed by the maxim, " omnia presumuntur rite esse acta."

ON REPORT.

The case appears in the opinion.

*E. C. Ryder*, City Solicitor, for plaintiff.

*J. B. Peaks*, for defendant.

SITTING: PETERS, C. J., EMERY, FOSTER, WHITEHOUSE, WISWELL, STROUT, JJ.

WHITEHOUSE, J. This is an action of assumpsit to recover the sums paid by the plaintiff city for the support of Maurice Foley in the insane hospital, including the expenses of his examination and commitment, amounting in the aggregate to $101.02.

It is admitted that Foley had a legal settlement in the defendant town, that he was adjudged insane by the "board of examiners" of Bangor, and by their authority committed to the insane hospital, and that the expenses sued for were incurred and paid by the plaintiff city. But it is strongly urged that the city is precluded from recovering in this action by reason of its failure to give the requisite notice of the facts to the overseers of the defendant town; and, secondly, by its omission to keep a proper record of the proceedings of the municipal officers respecting the examination and commitment of the insane person.

It is provided by section thirteen of chapter 143, R. S., that "the municipal officers of towns shall constitute a board of examiners, and on complaint in writing of any relative, or of any justice of the peace in their town, they shall immediately inquire into the condition of any person in said town alleged to be insane; shall call before them all testimony necessary for a full understanding of the case; and if they think such person insane, and that his comfort and safety, or that of others interested, will thereby be promoted, they shall forthwith send him to the hospital, with a certificate stating the facts of his insanity, and the town in which he resided or was found at the time of examination;" and that "they shall keep a record of their doings and furnish a copy to any interested person requesting and paying for it."

It is further provided by section nineteen of the same chapter that "the certificate of commitment to the hospital after a legal examination is sufficient evidence, in the first instance, to charge the town where the insane resided, or was found at the time of his arrest, for the expenses of his examination, commitment and support in the hospital;" and by section twenty-one that "any town thus made chargeable, in the first instance, and paying for the commitment and support of the insane at the hospital may recover the amount paid from the insane, if able, . . . . or from the town where his legal settlement is, as if incurred for the expense of a pauper." Section thirty-four declares that "in all cases of preliminary proceedings for the commitment of any person to the hospital, the evidence and certificate of at least two respectable physicians, based upon due inquiry and personal examination . . . shall be required to establish the fact of insanity, and a certified copy of the physicians' certificate shall accompany the person to be committed."

The evidence reported discloses a copy of the certificate of commitment, issued by the municipal officers of Bangor, April 7, 1894, duly attested by the city clerk, stating the facts according to the directions of the statutes, with an attested copy of the certificate of two "practicing" physicians, reciting the facts required by the statute; and it is not in controversy that on the seventh day of April, 1894, Maurice Foley was committed to the insane hospital. The report also discloses a copy of what purports to be a true "record of the commitment" of Maurice Foley to the hospital, dated April 7, 1894, duly attested by the city clerk of Bangor. And it is not questioned that barring the omission of this record to state that the two practicing physicians were also "respectable" physicians, it contains a statement of all the facts requisite to establish the regularity of the proceedings and a legal commitment of Foley to the hospital.

But it appears from the testimony of the city clerk of Bangor that this record in its present form was not extended on the book entitled "record of commitments to the insane hospital," intro-

duced at the trial, for nearly two years after the commitment of Foley.

It is therefore contended by the learned counsel for the defendant that it is not a valid and authentic record which can be accepted as evidence legally importing the verity of the statements therein contained.

It appears, however, from the testimony of the city clerk, that he made the extended record in question during the municipal year immediately succeeding that when the warrant for Foley's commitment was issued, and he continued to hold the office of city clerk by re-election at the time the extended record was made.

It is an established rule in New England, respecting the amendment of the records of a city or town, that the clerk who has made an erroneous or incomplete record, may, while in office or after a re-election to the same office, amend or complete such record according to the truth, being liable like a sheriff who amends his return for any abuse of the right. 1 Dillon's M. C. § 294; *Chamberlain* v. *Dover*, 13 Maine, 466; *Hartwell* v. *Littleton*, 13 Pick. 229; *Welles* v. *Battelle*, 11 Mass. 477. In the last named case it was distinctly determined that when a clerk continues in office several years by repeated annual elections he may amend the record of a former year, notwithstanding an election has intervened and though he does not hold the office under the same appointment; and this case was cited with approbation in *Chamberlain* v. *Dover*, 13 Maine, supra. In *Hartwell* v. *Littleton*, supra, Chief Justice Shaw, speaking of an amendment by a clerk after a re-election says: " The clerk not only knows the fact in relation to which the amendment is to be made . . . . but he still enjoys the confidence of the town, is by their vote entrusted with the custody of their records, and is held responsible for their purity and correctness under the sanction of an official oath and all such other guards as the law has thought it necessary to prescribe in the case of a clerk actually in office. The intervening election is substantially a continuance of the clerk in the same office." So in *Mott* v. *Reynolds*, 27 Vt. 206, Redfield, C. J., says: " We think in general it must be regarded as the right of the clerk of a town or

other municipal corporation, while having the custody of the records, to make any record according to the facts. His having been out of office and restored again, could not deprive him of that right." Again in *Boston Turnpike Co.* v. *Pomfret*, 20 Conn. 590, it was held that the clerk, still continuing in office, was competent to amend the record of a town-meeting six years after it was held; that this power is derived solely from his official character and does not depend on the permission of the court in which the record is offered as an instrument of evidence, nor on inquiry into the truth of it as originally made or as amended, and that such a record is in such an action conclusive evidence of its own truth. See also *Gibson* v. *Bailey*, 9 N. H. 168.

In the case pending before us, it appears from the certificate of commitment that the city clerk was himself the justice of the peace who made the complaint to the municipal officers upon which the adjudication was made respecting Maurice Foley; and the city clerk testifies that he preserved a copy of the certificate of commitment and the original certificate of the two physicians, as data from which to make a permanent record; that the delay in making this record was occasioned by the adoption about that time of a different book for a new form of record and that the "record of the commitment" of Maurice Foley, introduced in this case, was the official record of the facts made by him as city clerk.

It thus appearing that in extending this record, the city clerk acted in entire good faith, in the discharge of an official duty, it is the opinion of the court that this "record of commitments" is a valid record which should be received as conclusive evidence of the facts therein stated.

The statute requires the evidence and certificate of at least two "respectable" physicians to establish the fact of insanity, and it is objected that the record only shows that the evidence and certificate of two "practicing" physicians were before the board. But both the certificate of commitment signed by the municipal officers and the record signed by the city clerk state that the board had before them "all testimony necessary for a full understanding of the case," as required by the provision of section 13, ch. 143,

R. S.; and it has been seen that the evidence and certificate of two "respectable" physicians are declared by section 34, to be "necessary." It is not suggested that either the city physician, who signed the certificate, or the other eminent physician whose name appears on that instrument was not in fact "respectable;" and it is the opinion of the court that, aided by the presumption in regard to public officers, expressed by the maxim "omnia presumuntur rite esse acta," the evidence is sufficient to justify the conclusion that there was a full compliance with the requirements of the statute in this respect.

The notice sent to the overseers of the poor of the defendant town from the "office of the overseers of the poor" of Bangor by "L. C. Davis, overseer of the poor and sec'y", appears to be the inartificial result of an attempt to adapt the established formula employed in ordinary pauper cases to the modified conditions existing in this case; and while it is not to be commended as a precedent, it states with reasonable clearness and precision all the essential facts involved in the case, and leaves no opportunity for a misunderstanding respecting its purpose and object. It must therefore be deemed a substantial compliance with the requirements of the statute. It bears date April 9, 1894, and appears to have been sent after the expense of commitment, amounting to $13.05, had been actually paid by the city of Bangor, and being the first and only notice sent, it was obviously received before any payments had been made by the defendant town on account of the expenses therein said to have been incurred. The notice is therefore sufficient to charge the defendant town for all sums paid by the plaintiff within three months prior to such notice, and all expenses subsequently accruing and paid by the plaintiff within two years after the cause of action accrued. R. S., c. 24, § 35; *Veazie* v. *Howland*, 53 Maine, 39; *Jay* v. *Carthage*, 48 Maine, 357; *Bowdoinham* v. *Phippsburg*, 63 Maine, 497.

The plaintiff's right to reimbursement for all the items of expense specified in the account annexed to the writ having been established, the entry must be,

*Judgment for plaintiff.*