INHABITANTS OF THE TOWN OF TURNER

*vs.*

CITY OF LEWISTON.

Androscoggin. Opinion, April 27, 1938.

*Clifford & Clifford*, for plaintiff.
*Armand A. Dufresne*, for defendant.

Sitting: Dunn, C. J., Sturgis, Barnes, Thaxter, Hudson, Manser, JJ.

Hudson, J. On defendant's exceptions to acceptance of report of Referee. The action ("on the case"), based on Chapter 91, P. L. 1935, is to obtain reimbursement for "extra expense" on account of school conveyance of children of John J. O'Connor, a World War veteran.

It is conceded that O'Connor, during the time involved, had his pauper settlement in the City of Lewiston, but actually resided in the Town of Turner. Since 1930 he and his family had been receiving pauper supplies from the town, for all of which the city had reimbursed it until April 16, 1936. On that date an agreement was made, whereby in the future the city "would pay the bills of the O'Connor family direct to the merchants furnishing groceries, clothing, provisions, etc., with the exception, if it was necessary to furnish immediate medical service the Town of Turner would pay the Doctor, and the City of Lewiston would reimburse the Town of Turner." When this agreement was made, Turner was conveying O'Connor's children without compensation and continued so to do until the reimbursement statute was enacted in 1935.

It also appears that in 1932, before the agreement was entered into, the town had sued the city for pauper supplies furnished the O'Connor family but not for conveyance. This action was settled.

Chapter 91 aforesaid, entitled "An Act Relating to Pauper Expense" and headed "Pauper expenses of town, regulated," reads:

"Any city, town or plantation that has paupers, who reside in another city, town or plantation, who have children attending the public schools shall locate such paupers so that the city, town or plantation where they reside shall not be put to extra expense, for conveyance of children to primary or secondary schools; provided, however, that if the said city, town, or plantation does not so locate said paupers, the said city, town, or plantation shall reimburse the city, town, or plantation wherein the said paupers reside for the extra expense so caused."

The city did not "locate" the paupers as was its duty under the statute, and consequently the town was put to "extra expense." It

is admitted that the conveyance was necessary and that the charges made therefor were reasonable.

The city bases its exceptions on several grounds, only one of which, however, needs consideration.

It is not denied that the pauper notice, mentioned in Section 31 of Chapter 33, R. S. 1930, was not given. The town contends that it was not necessary. Was it? Did the legislature intend Chapter 91 should become part and parcel of the general statutory pauper law, requiring notice? The body of the statute shows plainly that it relates only to expense incurred for paupers; likewise its title and heading. True, it makes no mention of notice as a prerequisite to recovery. On its face it neither requires nor excuses it. But is it reasonable to believe that the framers of this Act, providing for reimbursement for conveyance as a pauper supply, intended to dispense with notice, a prerequisite to recovery for ordinary pauper supplies? We think not.

This Court has held that pauper notices are given for different reasons, as (1) to permit the Overseers of the town of settlement to take such measures as they deem expedient (*Inh. of Garland* v. *Inh. of Brewer*, 3 Me., 197, 199) ; (2) to lay foundation for future action (*Inh. of Holden* v. *Inh. of Glenburn*, 63 Me., 579, 580; *Town of Durham* v. *Town of Lisbon*, 126 Me., 429, 431, 139 A., 232 ; (3) to give information that the relief and expense will fall on the town notified (*Inh. of Kennebunkport* v. *Inh. of Buxton*, 26 Me., 61, 66; *Inh. of Cooper* v. *Inh. of Alexander*, 33 Me., 453, 454) ; and (4) to prevent accumulation of expense and permit removal of the pauper (*Inh. of Fayette* v. *Inh. of Livermore*, 62 Me., 229, 233).

It would seem that the town of settlement should be notified of an expense incurred or to be incurred for school conveyance (it having been constituted a recoverable pauper expenditure) as well as for any other pauper supply. With knowledge thus received, the town of settlement may take such measures as its Overseers deem best for its interests. It may adopt a program for the future. Expenses may be lessened. Removal of the pauper may be effected.

The giving of a pauper notice is important for another reason. By reference it fixes the time when the cause of action accrues and the statute of limitations commences to run. *Inh. of Veazie* v. *Inh.*

*of Howland,* 53 Me., 39, 44; also see *City of Bangor* v. *Inh. of Orneville,* 90 Me., 217, 222, 38 A., 153.

Chapter 91 contains no provision as to the statute of limitations. This tends to show that it was intended that the action for reimbursement for school conveyance should accrue as in other actions for pauper supplies and be governed by the same statute of limitations.

Also, the fact that Chapter 91 compels the location of the paupers in the town of actual residence by the town of settlement indicates an intention that the notice be given, else, in certain instances, the town of settlement might not have knowledge of its paupers' presence in the town of residence.

The pauper notice statute is mandatory. It says: "Overseers shall send a written notice . . . ." See Sec. 31, Chap. 33, R. S. 1930, Had such a radical change from usual practice been intended as to dispense with the giving of the notice, the legislature likely would have expressly excused it.

The subject of Chapter 91, P. L. 1935 and of Chapter 33, R. S. 1930, is the same, for both statutes relate to paupers, pauper settlements and expenses. All statutes on one subject are to be viewed as one and such a construction should be made as will as nearly as possible make all the statutes dealing with the one subject consistent and harmonious. *Smith* v. *Chase,* 71 Me., 164, 165; *Inh. of Guilford* v. *Inh. of Monson,* 134 Me., 261, 265, 185 A., 517.

*Inh. of Rockport* v. *Inh. of Searsmont,* 101 Me., 257, 63 A., 820, 822, seems to be of controlling effect. There, suit was brought to recover expenses incurred against the town of settlement for commitment of an insane person to the State Hospital at Augusta and for support therein. Recovery for such commitment and support was provided for in a statute (Sec. 24, Chap. 144, R. S. 1903) other than the general pauper statute and in it no mention of a pauper notice was made. The Court said:

> "While Chapter 144 is silent as to the requirements of any pauper notices, either in the original or the recommitment proceedings, yet we think the entire scheme of the chapter is based upon the theory that the expenses and support incurred under it are in the nature of pauper supplies. . . . We are therefore inclined to the opinion that the proceedings under R. S.

Chapter 144, with respect to expenses and support of a person committed to the asylum by the town committing and not the pauper residence of such person, comes within the purview of R. S., Chapter 27, with reference to the notice required by one town to another in case of furnishing pauper supplies."

To the same effect, see the same case when before the Law Court a second time. *Inh. of Rockport* v. *Inh. of Searsmont*, 103 Me., 495, 70 A., 444. Also *City of Bangor* v. *Inh. of Fairfield*, 46 Me., 558; *Inh. of Cooper* v. *Inh. of Alexander*, supra.

In *Inh. of Eastport* v. *Inh. of East Machias*, 40 Me., 280, it was taken for granted that the notice was necessary.

In *Inh. of Naples* v. *Inh. of Raymond*, 72 Me., 213, the Court stated that recovery might be had "provided the requisite notice is given," citing *Bangor* v. *Fairfield*, supra, and *Jay* v. *Carthage*, 48 Me., 353.

It is to be noted that the Referee in his report found and stated that "while this item of expense was not formerly a pauper charge, Chapter 91, of the Public Laws of 1935 brought it within the provisions of the pauper statutes," and then recommended judgment for the plaintiff in spite of the fact that no pauper notice was given. He held it was not necessary on account of the settlement of the 1932 suit above mentioned and the subsequent agreement.

But the agreement can not be construed as having anything whatever to do with school conveyance. It gave no authority to the Town of Turner to make any expenditure and obtain reimbursement therefor except as to immediate medical services. As a matter of fact, this agreement was entered into some three years before school conveyance was constituted a pauper supply.

As to the settlement of the 1932 suit, if a pauper notice were then actually given (and there is nothing in this record to show it), it does not aid the plaintiff, for the settlement of the suit rid that notice of all future effect. It is well settled that if pauper supplies are furnished and paid for after notice is given, then there can be no recovery for later supplies without the giving of a new notice. *Bangor* v. *Fairfield*, supra; *Eastport* v. *East Machias*, 40 Me., 280, 282; *Greene* v. *Taunton*, 1 Me., 228; *Gross* v. *Inh. of Jay*, 37 Me., 9, 11.

*Exceptions sustained.*