ELLEN E. LARSON

*vs.*

NEW ENGLAND TELEPHONE AND TELEGRAPH CO.

Cumberland.   Opinion, September 18, 1945.

*Jacob H. Berman,*

*Edward J. Berman,*

*Sidney W. Wernick,* for the plaintiff.

*Hutchinson, Pierce, Connell, Atwood & Scribner,*

> *by Leonard A. Pierce and Fred C. Scribner,* for the defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MURCHIE, JJ.

MURCHIE AND THAXTER, JJ. DISSENTING.

CHAPMAN, J.   Plaintiff sues to recover damages sustained by her automobile while in the possession of and operated by a bailee upon the highway. She claims that the damage was caused by a depression in the highway for which the defendant was responsible.

The case is submitted to this court upon a certificate of the Judge of the Superior Court that questions of law of sufficient importance are involved to justify such submission,—the question of liability to be decided upon so much of the evidence reported as is legally admissible. If there is no liability, judgment is to be rendered for the defendant. If there is liability, judgment is to be rendered for the plaintiff, damages to be assessed by the court below.

The defendant is a telephone company and one of the public

service corporations, the rights and duties of which are set forth in Chap. 46 of R. S. 1944, which was Chap. 68 of R. S. 1930, the revision of the statutes in effect at the time of the occurrences declared upon in the plaintiff's writ.

In September of 1942, the defendant undertook the laying of an underground cable on a course that passed through the Town of Cumberland and across the Middle Road, so called, a road that had been designated as a state aid highway under the provisions of Sec. 17, Chap. 28, R. S. 1930. This road was surfaced with what is commonly known as tarvia, composed of tar and gravel mixed and applied in such manner as to form a smooth, hard surface. It was in good repair at the place of crossing.

Permission to make an excavation across the road was sought and obtained from the Town of Cumberland in accordance with Sec. 14, Chap. 68, R. S. 1930, and because of the regulations established by the State Highway Commission, a permit was sought from that organization and the same granted, with the proviso that the work of relaying the pavement over the excavation should be performed by the Commission at the expense of the defendant. This was in accordance with a procedure adopted by the Commission by which it took to itself a like authority to that granted to the cities by the provisions of Sections 118-127, inclusive, of Chap. 27, R. S. 1930, when a paved street within their borders is excavated. Sec. 125 provided that in the cases outlined in the two preceding sections, the pavement should be relaid by the commissioner of public works of the city or by such official as the city should designate.

The authority of the State Highway Commission to require such procedure and the protection afforded the public service corporations named in Chap. 68 if they follow this procedure and if the Commission fails to fulfill the requirement set forth in Sec. 15 of that chapter of restoring the road to as good re-

pair as it was before the excavation, is one of the questions that must be passed upon in this case.

After laying the cable, the defendant completed the rough fill some time before November 24th and notified the State Highway Commission that it had completed its work and that the "state could make the necessary repairs." The surface fill varied in width from eighteen inches to four feet. On November 24th the Commission resurfaced the portion of the road that had been excavated, with cold patch, a substance composed of gravel and liquid tar, no heat being used to harden the mixture. On December 3rd or 4th, according to representatives of the Commission, the material had "kicked up" leaving a depression of "four or five or six inches." On that date the roadmen of the Commission again filled the depression, this time with gravel with no binder except, as stated by the Commission's patrolman, a little clay. Such is the undisputed evidence of the proceedings previous to the accident.

On December 11th, the plaintiff loaned her car to her daughter, Mrs. Bither, who was driving on the road in a westerly direction accompanied by a friend, Mrs. Sumpter. The road was very slippery from ice and frost. According to the testimony of Mrs. Bither and Mrs. Sumpter, when the wheels of the car struck the depression caused by the displaced gravel, the car skidded and overturned.

The plaintiff alleges in the usual form that the defendant was guilty of negligence by reason of faulty repair of the road, and also alleges that it was the duty of the defendant to put the road into as good repair as it was before the excavation and, failing so to do, was guilty of maintaining a public nuisance and answerable to her for her special damage.

We shall consider the matter upon the latter allegation. A finding in favor of the plaintiff requires:

1—That Sec. 15, Chap. 68, R. S. 1930, was in effect

and applicable to the defendant corporation in the excavation of the road and the restoration thereof. Such is a question of law.

2—That the road was not restored, within a reasonable time, to as good repair as it was before the excavation. Such is a question of fact.

3—That the depression was a cause of the overturning of the car. Such is a question of fact.

We shall discuss these questions in the order named.

For convenience of expression, chapters of the statutes referred to, unless otherwise designated, will be of the 1930 revision; and the provisions of the chapters and sections in that revision will be referred to by their numbers therein, although they have an earlier origin.

The first issue requires an examination of the provisions of Chapters 27, 28 and 68.

Sec. 15 of Chap. 68 reads as follows:

"Any such corporation digging up and opening such roads and streets, shall do so in such manner as to cause the least possible interference with public travel, and shall put all such highways, roads, and streets which it shall dig into and open, into as good repair as they were before they were dug into and opened; and on failure to do so within a reasonable time, such corporation shall be deemed guilty of causing a public nuisance, and shall be liable to the city or town for all expenses incurred in making such repairs."

The corporations referred to in the section are certain of the public service corporations, inclusive of telephone companies,

with which the chapter deals. It provides for the organization and control of such corporations. It grants rights and imposes obligations. Sec. 10 of the act reads:

"Every corporation organized hereunder for the purpose of operating telegraphs or telephones, may, except as herein limited, construct, maintain, and operate its lines upon and along the route or routes and between the points stated in its certificate of incorporation; and may, subject to the conditions and under the restrictions provided in this chapter, construct its lines along, over, under and across any of the roads and streets and across or under any of the waters upon and along such route or routes, with all necessary erections and fixtures therefor."

It is by reason of the provisions of these sections that the plaintiff claims that the defendant was guilty of causing a public nuisance.

The defendant claims that the provisions of Chap. 28 establishing the State Highway Commission, taken together with provisions of Chap. 27, places the matter of excavations in those roads that have been designated as state or state aid highways, exclusively in the hands of the Commission.

Legislative history discloses that Chap. 27 is an assembly of enactments that have been passed from time to time for the purpose of proper control of roads of every description. The essential provisions were in effect many years before the enactment of Chap. 68 relative to public service corporations, and Chap. 28 creating the State Highway Commission.

It is within the exclusive jurisdiction of the Legislature to lodge control of the roads of the state in the municipalities and to prescribe rules as to the exercise of such control. *McMillin Municipal Corporations,* 2nd Ed., Sec. 1414. This was done

by the provisions of Chap. 27. The responsibility of maintaining and keeping the roads in proper repair was imposed upon the municipalities and, under prescribed procedure, they were subject to penalty for failure to keep in proper repair. Such a responsibility carried the right and duty to exercise control over the excavating of roads and the restoration to the condition that the same were in before the excavation was made. Such was the situation before the enactment of Chap. 68. All parties, individuals and corporations were subject to the same control, when engaged in such undertaking.

The provisions contained in Chap. 68 were enacted in 1895 and telephone and telegraph companies were granted, in Sec. 10 above quoted, the right to construct its lines over or under any road or street but subject to the conditions and restrictions contained in the chapter. A part of the conditions imposed are included in Sec. 15. These provisions were specially imposed upon the corporations named and took precedence over the general provisions of Chap. 27. *Crawford's Statutory Construction*, Sec. 230; *Lovegrove* v. *Hunt*, 58 Me., 9.

There can be no question raised that upon the passage of Chap. 68, a telephone company excavating a road was subject to the special provisions of Sec. 15, nor do we think that the question would be raised that such would be the case at the present time if the way were a town road as distinguished from a state or state aid highway.

The provisions of Chap. 28 were enacted in 1913. The object of the chapter was to establish a system of state highways and to create a highway commission to have general charge of the same. The Commission being purely a creature of statute is subject to the rule universally applicable to all bodies that owe their existence to legislative act. It must look to the statute for its authority. *Alley* v. *Inhabitants of Edgecomb*, 53 Me., 446; *Anheuser-Busch, Inc., et al* v. *Walton et al*, 135 Me., 57, 190 A., 297.

The limits of the authority of political organizations created by the Legislature are well stated in *Willard* v. *Killingworth Borough*, 8 Conn., 247, 253:

> "They act not by any inherent right of legislation, like the legislature of the state; but their authority is delegated; and their powers, therefore, must be strictly pursued. *Within* the limits of their charter, their acts are valid; *without* it, they are void."

The statute creating the State Highway Commission gave it the power to

> "lay out, construct and maintain a system of state and state aid highways. . . ."
> As to state aid highways, it was provided that such
> "shall be continually maintained under the direction and control of the commission at the joint expense of the state and town in which the same are located;".

The control granted in the chapter to the Commission is no more complete in its effect than that which was previously lodged in the municipalities by the provisions of Chap. 27. It was the apparent purpose of the Legislature to transfer from the town to the Commission the control of those roads that should become state aid highways, that previously had been invested in the municipalities. It is true that Sec. 7 of the act provided that

> "The commission may from time to time make and shall enforce rules and regulations relating to construction and maintenance of all state and state aid highways . . ."

But this adds nothing to what the municipalities could do

previous to the enactment of the statute. The municipalities had the right and duty to oversee and superintend by all reasonable methods the construction and maintenance of roads, including excavations and restorations. Even if it had intended to do so, the Legislature could not authorize the Commission to make regulations that would invalidate a legislative mandate that remained unrepealed. Such would be a delegation of the power to legislate. Any regulation that conflicts with any existing statute must yield thereto. *Mayor etc. of Savannah* v. *Ellington Co.*, 177 Ga., 149, 152, 170 S. E., 38.

It adds nothing to the powers of the Commission to call its activities the exercise of a governmental function or to say that the State of Maine was acting through its agency. The state acts only through its duly constituted agencies but the functions of those agencies are limited by the powers delegated.

This court said in *Cooper* v. *Fidelity Trust Company*, 134 Me., 40, 50, 180 A., 794, 799 in discussing the validity of acts of the Bank Commissioner, an agency of the state created by the Legislature:

> "His duty is to administer the law, not to make it or set it aside. His directions to that effect, reported here, were clearly outside his authority and void."

As long as Sec. 15 of Chap. 68 remains a statute, failure to fulfill its requirements constitutes a public nuisance which cannot be legalized.

*Woods Law of Nuisances* says in Sec. 747:

> "While municipal corporations may provide by ordinance for the prevention and removal of, yet it cannot license a nuisance."

This language is applicable to the Commission.

The history of the creation of a state highway system in Massachusetts is similar to that of Maine. Upon the establishment of the State Department of Public Works, the control and maintenance of the state roads were given to that department as fully as control is given over state roads to the State Highway Commission by the Maine statute. Also provision was made that all excavations should be under the supervision and in accordance with the regulations of the department and at the expense of the party excavating. Another statute specially applicable to gas and electric companies provided that such companies should restore excavated highways to as good repair as before. The language used was substantially the same as that of our Sec. 15 of Chap. 68. Thus the procedure covering excavations was similar to our own. There was a general provision that the work should be done under the supervision of the Department of Public Works at the expense of the party excavating and also provisions applicable specially to certain public service companies by reason of which they were bound to restore the road to the same repair as before the excavation, under penalty of being adjudged guilty of causing a nuisance upon nonfulfillment of the provision.

In *Bern* v. *Boston Consolidated Gas Co.*, 310 Mass., 651, 39 N. E., (2d), 576, action was brought against the defendant public service company for damage caused by the alleged failure of the defendant to restore an excavated road to as good repair as before the excavation. While no issue was raised that the section was not in effect because of the general control of state roads granted to the Department of Public Works, the opinion and decision show that the court considered the provision that the public service company should itself restore the road to its former repair to be unaffected by the grant of general control to the Department of Public Works. It held that if the defendant public service company fails to restore as provided, it is guilty of maintaining a nuisance and liable to one who has suffered special injury from the same. See also

*Sullivan* v. *Boston Consolidated Gas Co.*, 316 Mass., 404, 55 N. E., (2d), 608.

Examination of the New Hampshire statutes discloses a similar history and similar provisions. The general control of state roads previously in the municipalities was given to the Commissioner of the State Highway Department. There also existed a statute applicable only to excavations made for the purpose of laying water or gas pipes and providing that the parties making excavations

> "for such purpose shall restore the highway or ground to as good condition as it was in before . . . ."

In *Emerson* v. *Twin State Gas & Electric Co.*, 87 N. H., 108, 174 A., 779, suit was brought against the defendant corporation for injuries caused by failure to restore; and the court held that it was liable under the provisions of the act referred to. Moreover, in this case the provisions of an ordinance were invoked, requiring that in excavations the repairs should be performed by the street commissioner of the municipality and paid for by the party excavating. It was held that such ordinance did not supersede or invalidate the statute.

It is our opinion that there was nothing in the grant of the general control of state highways to the Maine State Highway Commission that in any way affected Sec. 15 of Chap. 68, and regardless of the resurfacing by the Commission, the statutory responsibility therefor remained upon the defendant. *Emerson* v. *Twin State Gas & Electric Co.*, supra.

But the defendant asserts that, in addition to the general authority extended in other sections of the chapter creating the Commission, Sec. 16 was sufficient to give the authority claimed for it. The section provides as follows:

> "The provisions of section fifteen of chapter sixty-eight and of sections one hundred eighteen to one hun-

dred twenty-seven, both inclusive, of chapter twenty-seven, relating to the repair of streets dug into, may be enforced by the commission wherever state or state aid highways are affected."

Sec. 15 of Chap. 68 we have already quoted. The ten sections of Chap. 27 referred to are set off in the 1930 revision as a distinct part of the chapter under the designation "Excavations in City Streets" and are devoted entirely to that subject. The sections included provide as to when and under what conditions the streets of a city may be opened, and they specify in detail the duties of city officials relative to the subject. Sec. 125 which must be read in connection with the other sections is as follows:

"When any excavation shall be made in any paved public highway and the trench shall have been filled as required by the two preceding sections, the commissioner of public works or such officer as the city government may appoint, shall relay the pavement; the cost thereof, including materials, labor, and inspection, shall be paid out of any moneys in the city treasury standing to the credit of the regular fund for this purpose."

The intent of the Legislature in the provisions of Sec. 16 of Chap. 28 providing for the enforcement of parts of Chapters 27 and 68 is not difficult of interpretation if we observe the primary rule that the Legislature is presumed to intend that its language shall be given its ordinary meaning. The ordinary meaning of "enforce" is "to compel obedience to," "to cause to be executed." Such was the meaning given in *Tennant* v. *Kuhlemeier*, 142 Iowa, 241, 120 N. W., 689, 693, 19 Ann. Cas., 1026, a case in which was involved the interpretation of a statute making it the duty of an official to enforce certain statutes; and it would seem that when an official organization

is charged with the enforcement of a statute it is intended that the statute shall be enforced as it reads.

According to the defendant's interpretation, the word "enforce" was intended, not to give authority to see that the provisions of the statute relative to roads in cities were executed according to the terms thereof, but that it enabled the Commission to establish a procedure identical with that which the Legislature had provided for city streets and city officials and substitute such procedure in place of the statute as written. It assumed authority to do the work of resurfacing excavated roads at the expense of the party excavating; but what is more pertinent to the present case, it claimed authority to follow such procedure to the exclusion of the provisions of Sec. 15 of Chap. 68. This it could not do.

It cannot be maintained that this section has been repealed. On the contrary it has been reenacted in each succeeding revision of the statutes. Sec. 16 of Chap. 28 providing for enforcement of Sec. 15 of Chap. 68 is a reaffirmation of the latter section and clearly indicates that it was the intention of the Legislature that it should remain in force and that the Highway Commission should enforce it as written. Such intention was not inconsistent with the grant of general control of the roads. Rather it provided an effective means of exercising such control.

The importance which the Legislature attached to the provisions in said Sec. 15 is apparent from the drastic provisions relative to nonfulfillment by a public service corporation, and the appointment of an enforcing agency. Not only were its provisions a condition attached to the granting of rights in the streets to the public service corporations named; but its nonfulfillment was made a public nuisance, an indictable offense. Further, a public nuisance is abatable by the proper officials. *25 Am. Jur., Highways*, Sec. 618; *Smith et al v. McDowell,* 148 Ill., 51, 69, 35 N. E., 141, 22 L. R. A., 393. And the Commission

was designated as the proper official agency to proceed for abatement of such a nuisance and also to make complaint for criminal prosecution.

The defendant argues that it was the policy of our Legislature to enable the Commission to maintain the highways in a uniform condition and that it was conducive to this purpose that the Commission do all resurfacing; but we can conceive of no more effective means to this end than the provisions of Sec. 15 of Chap. 68, the enforcement of which is delegated by Sec. 16 of Chap. 28 to the Commission.

The defendant cites several cases in other jurisdictions, in which it was held that the defendants were not liable for the condition of the streets complained of; but in each of these cases the condition resulted from an undertaking of the municipality within its powers and with which the defendant corporation had no authority to interfere. It was upon such premise that each of the decisions was rendered. *Swift* v. *Brooklyn Heights R. Co.*, 118 N. Y. S., 827, is typical of cases cited. The defendant corporation had the duty of keeping in repair the street between and within two feet adjacent to its tracks but the city had the right to open the street and did so to repair a water gate under the surface, and the injury to the plaintiff resulted from the condition created. The court held that the defendant could not be held responsible for a condition due to an undertaking over which it had no control. If the State Highway Commission had authority to make the repairs to the exclusion of the corporation as contended by the defendant, the cases cited would be authority to sustain its position; but, as we have pointed out, the duty of restoration was by statute placed exclusively upon the defendant, and the legal effect of the acts of the parties is not altered by the fact that the situation of the defendant appears

"to have grown out of an excusable but erroneous in-

terpretation of the law seemingly justified by precedent,"

*Cooper* v. *Fidelity Trust Company*, supra.

The defendant says that the assumption of authority by the Commission, though it were illegal, made it impossible to meet the requirements of the statute. We cannot accept this contention. *Emerson* v. *Twin State Gas & Electric Co.*, supra. If the defendant had correctly interpreted its position and asserted its statutory rights and attempted the fulfillment of its statutory duty, the Commission would have been unable to prevent the same. The court would have restrained the Commission from interference, by unauthorized regulations or otherwise. *Anheuser-Busch, Inc. et al* v. *Walton et al*, supra.

It must be held that Sec. 15 of Chap. 68 was in effect, and that if the defendant failed within a reasonable time to obey its mandate to put the road into as good repair as before the excavation, it was guilty of causing a public nuisance.

That the excavated section of the road was not put into as good repair as before admits of no argument. We do not understand that it is claimed that such repair was effected, either by the defendant or by the State Highway Commission in its behalf. The Commission resurfaced the road with a material that perhaps temporarily rendered the road reasonably safe for travel but which was without the resistance to wear and weather that the original surface possessed and, in ten days time, this material had worn and washed away. The depression was then filled with loose gravel containing a little clay. Such restoration did not put the road into as good repair as before.

The defendant claims that the repairs were such as the Commission was accustomed to make under the existing conditions; but such was not a compliance with the statute nor would it have been sufficient if it could be said that the repairs made

the road reasonably safe. The statute set the requirement and that is the requirement that must be fulfilled.

Ruling that the measure of duty of the corporation excavating is the putting of the road into a reasonably safe condition, would establish the right to open a road of expensive construction and by repairing it with inexpensive materials to leave it for the time being in a condition reasonably safe for travel but far short of the condition in which it was found. Such interpretation would also on occasion place the corporation in an unfair situation in that it would be compelled to put into a safe condition a road that was impassable before it was excavated. This was pointed out in *Seltzer* v. *Amesbury & Salisbury Gas Co.*, 188 Mass., 242, 74 N. E., 339. In *Bern* v. *Boston Consolidated Gas Co.*, supra, it was held that the gist of the action for the injuries received by reason of nonfulfillment of the statute is the nuisance itself, not that it was negligently maintained.

We find that the road was not within a reasonable time put into as good repair as before the excavation and, therefore, that a nuisance existed.

As to the cause of the skidding and consequent overturning of the car, it is not in dispute that the road was very slippery and for that reason the driving was difficult. It is common knowledge that under such conditions anything which interrupts or interferes with the control of the driver is a sufficient cause of skidding. It is also common knowledge that when the wheels of a car encounter a hole or rough places in the road, the control of the driver is made more difficult. It is to be observed from the photographic exhibits introduced, that a depression crossed the road diagonally at an angle of approximately forty-five degrees which would cause the left front wheel of the car to drop into the depression before the right front wheel, and this fact would make more uncertain the steering of the car upon the icy pavement.

Unless we entirely disregard the testimony of both Mrs. Bither and Mrs. Sumpter, we must find that the skidding of the car took place at the exact time when the wheels struck the depression. Both testified that there was a distinct jar followed by loss of control. The car was operated safely upon a smooth, hard surface but skidded when it came in contact with the defective condition of the road at the place of excavation.

The defendant lays stress upon the curve in the road as a cause of the skidding. Photographic exhibits show pronounced curves east and west but Plaintiff's Exhibits Nos. 5, 6, 12 and 13 taken in close proximity to the excavated section and clearly showing the course of the road at that point show little, if any curve. The car had safely passed a pronounced curve but skidded upon the excavated area.

Moreover, if the curve were a factor in increasing the difficulty of control, still this does not prevent liability from attaching if the defect in the road was the culminating cause of the skidding. *Lake* v. *Milliken*, 62 Me., 240, 16 Am. Rep., 456; *Hutchins* v. *Emery*, 134 Me., 205, 207, 183 A., 754; *Neal* v. *Rendall*, 100 Me., 574, 62 A., 706.

No question of contributory negligence by the driver is before us. *Robinson* v. *Warren*, 129 Me., 172, 151 A., 10; 39 *Am. Jur.*, *Nuisances*, Sec. 200; *Warren* v. *City of Bridgeport*, 129 Conn., 355, 28 A., (2d), 1.

We find that the condition of the road caused by the failure of the defendant to restore to as good condition as before the excavation was the cause of the plaintiff's damage.

The defendant was guilty of causing a public nuisance as specified in the statute, and the plaintiff having suffered special injury therefrom is entitled to recovery. Chap. 26, Sec. 19, R. S. 1930; *Brown* v. *Watson*, 47 Me., 161, 74 Am. Dec., 482; *Smart* v. *Lumber Co.*, 103 Me., 37, 68 A., 527, 14 L. R. A. N. S. 1083; *Smith* v. *Preston*, 104 Me., 156, 71 A., 653; *Bern* v. *Boston Consolidated Gas Co.*, supra.

The entry must be

*Judgment for the Plaintiff.*
*Remanded to the court below*
*for assessment of damages.*

DISSENTING OPINION.

MURCHIE, J. I am unable to concur in the decision that the defendant caused a public nuisance in a state aid highway on December 11th, 1942 within the purview of the statute on which the majority of the Court relies. I am satisfied that more than 30 years' legislation designed to vest full control over an interlocking system of state highways and the continuous maintenance of state aid highways in a State Highway Commission has not been so pointless and ineffective that its employees may be enjoined from conducting maintenance work on a highway opened for the laying of a cable until the permittee has restored it to good repair.

If the opinion of the majority is taken literally one who digs up any highway except a paved city street becomes an insurer against damage subsequently suffered thereon (presumably within a reasonable time) traceable to road work by the State Highway Commission unless the one so opening the highway has maintained its legal right to put the highway in good repair by the use of injunctive process, if necessary, to restrain interference on the part of unauthorized authority. Despite the definite dictum of the Court majority declaring the right to this extraordinary remedy, I cannot believe that if the issue is raised squarely the clear mandate of R. S. 1930, Chap. 28, Secs. 9 and 18 as amended will be ignored.

The depression in the highway which is found factually to have caused the plaintiff's automobile to overturn did not result from defendant's refilling of the trench. That refilling was completed on November 24th, 1942 and employees of the State Highway Commission immediately took over to lay a road

surface. The defendant left no depression. It filled the trench with tamped-in gravel, crowned at the road surface. The evidence discloses and the opinion of the majority recognizes that the depression apparent on December 3rd or 4th was caused by the kicking up of materials placed in the highway by employees of the State Highway Commission. The State laid a second new surface after December 3rd and there can be no doubt on the record that the road condition which caused the damage (on the finding of the Court majority) was the direct result of its failure to withstand wear and weather. When the facts are analysed it is clear that the liability imposed on the defendant is not based on its failure to make the highway safe and convenient for travel (for which it would have been holden to indemnify public authority against any claim originating in a highway defect) but on its omission to resist intermeddling by the State Highway Commission.

The statute on which the liability is grounded antedates the highway policy induced by the advent of automobiles. Motor vehicle traffic required the policy declared in P. L. 1913, Chap. 130 (R. S. 1930, Chap. 28, Sec. 1) with its interlocking system of state highways and continuous maintenance thereof (and of state aid highways) which superseded earlier less-inclusive legislation along similar lines. R. S. 1903, Chap. 23, Secs. 99 et seq.; P. L. 1907, Chap. 112; P. L. 1909, Chap. 69; P. L. 1911, Chaps. 21 and 183. The conception of state roads as distinguished from those constructed and maintained by counties and municipalities traces back to 1901, P. L. 1901, Chap. 285. The objective since has been increasing state participation and control over both construction and maintenance. R. S. 1903, Chap. 23; R. S. 1916, Chap. 25; R. S. 1930, Chap. 28; R. S. 1944, Chap. 20. (See also the laws enacted from 1901 to 1943 inclusive consolidated in the several revisions.)

P. L. 1913, Chap. 130 constituted the State Highway Commission as an administrative agency to control the construc-

tion and maintenance of a state highway system, superseding the State Commissioner of Highways. P. L. 1907, Chap. 112. Since the effective date of the 1913 law the State Highway Commission has been vested with exclusive authority to "lay out, construct and maintain a system of state and state aid highways" (P. L. 1913, Chap. 130, Sec. 8; R. S. 1930, Chap. 28, Sec. 8), and charged with the duty of continuous maintenance of state and state aid highways (to the improvement of which the State has contributed), P. L. 1913, Chap. 130, Secs. 9 and 18; R. S. 1930, Chap. 28, Secs. 9 and 18. As of the same effective date the State undertook to reimburse municipalities on judgments recovered for defects in the highways it was obligated to maintain. P. L. 1913, Chap. 130, Sec. 27; R. S. 1930, Chap. 28, Sec. 39.

The foundation for the opinion of the Court majority lies in the fact that R. S. 1930, Chap. 68, Sec. 15 has not been repealed or modified by express enactment. The same is true of R. S. 1930, Chap. 27, Secs. 1, 16, 25, 29, 55, 60, 66, 70 and 86, yet the authority there conferred upon county commissioners and municipal officers by explicit language unchanged since 1883 has been vested in the State Highway Commission to the exclusion of the named local officers for more than 30 years except for highways which have not become a part of our state-wide system.

Without reference to anything outside R. S. 1930, Chap. 68, Sec. 15, I cannot believe the Legislature intended that one opening a highway for laying pipe or cable should be holden for causing a public nuisance if the municipal officers repaired the opening. The State Highway Commission has been substituted for municipal officers as to all the provisions of the section "relating to the repair of streets . . . ." P. L. 1913, Chap. 130, Sec. 16; R. S. 1930, Chap. 28, Sec. 16. Since it assumed to make or complete "such repairs" as it deemed necessary to put the highway in "as good repair" the permittee should not be held to have caused a nuisance thereby.

Reference to the history of R. S. 1930, Chap. 68, Sec. 15 discloses that it traces back to P. L. 1895, Chaps. 102 and 103, dealing respectively with Gas and Electric Companies and Telegraph and Telephone Companies. It appears as Section 7 of the former, where it closes with the words "shall be decreed guilty of nuisance." Section 10 of that law carried provisions substantially identical with R. S. 1930, Chap. 68, Sec. 17. The words "and shall be liable to the city or town for all expenses incurred in making such repairs" were written into R. S. 1903, Chap. 55, Sec. 7 in consolidating the two 1895 laws therein. They seem to indicate, as did P. L. 1895, Chap. 102, Sec. 10 which became R. S. 1930, Chap. 68, Sec. 17, that municipalities should repair roads opened under permit if the permittees did not and to impose liability for damages resulting from highway defects in default of repair by either permittee or municipality.

The recovery allowed is under R. S. 1930, Chap. 26, Sec. 19. Section 5 of the same chapter describes numerous nuisances including the obstruction or encumbering of highways by fences, buildings or otherwise. The express recitals of R. S. 1930, Chap. 68, Sec. 15 that persons digging up highways shall do so in such manner as to produce the minimum of interference with public travel and of the following Section 17 requiring permittees to reimburse municipalities holden for highway defects traceable to the digging indicate that the legislation involved is being given a scope which far exceeds the legislative intention underlying its enactment.

I am authorized to say that Mr. Justice Thaxter is in agreement with this dissent.