**Laurie BECKETT et al.**

v.

**Thomas RODERICK et al.**

Supreme Judicial Court of Maine.

March 21, 1969.

Locke, Campbell & Chapman by Frank G. Chapman, Augusta, for plaintiff.

Eaton, Peabody, Bradford & Veague by Arnold L. Veague, and John E. McKay, Bangor, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, DUFRESNE, and WEATHERBEE, JJ.

DUFRESNE, Justice.

On Appeal. Excepting Beckett, Leland, Bonville, Fernald and Favour who were dropped as parties by motion under Rule 21, M.R.C.P., and Sweet and Small who at argument were said to have accepted teacher contracts with other school authorities making their present claim moot, the remaining plaintiffs are all teachers who had acquired tenure under 20 M.R.S.A., § 161(5) within the school system of their respective towns of Bar Harbor, Mount Desert and Southwest Harbor. The legal voters of these 3 towns and of the Town of Tremont duly accepted, in referendum elections properly called for that purpose, that the inhabitants of and the territory within the 4 towns be "created a body politic and corporate under the name of Mount Desert Island Regional School District" under the Private and Special Laws of the State of Maine, 1963, Chapter 176. The legislative intent underlying the granting of corporate status to Mount Desert Island Regional School District (Regional), couched in broad terms of school purposes, is more significantly revealed by the specific declaration of the lawmakers that the creation of the regional school district was "for the purpose of organizing and maintaining a Regional School; all for the benefit of the inhabitants of said district," the word "school" being defined in the Act to mean grades 9 to 12, inclusive.

Although Regional received voter acceptance in March, 1965 and was operational through its school committee as early as May 20, 1965 when said committee organized as such under the law and elected Floyd O. Mathews as the Superintendent of Mount Desert Regional High School, the Regional School Committee did not get around to elect teachers to serve in Regional High School until 1967 when it appeared that the Regional School neared completion and would be available for use in the 1968–69 school year. On December 11, 1967 the Regional School Committee authorized Mr. Mathews as Superintendent of the Regional School District to issue one-year probationary contracts to all the plaintiffs excluding Esther Trask covering teaching services in Regional High School for the 1968–69 school year. The plaintiffs contend that these one-year probationary teaching contracts, authorized, issued and transmitted to the plaintiffs by the Regional School Committee, are violative of their tenure rights under 20 M.R.S.A., § 161(5). Plaintiff Trask claims that the District's failure to recognize her right to automatic transfer of her municipal teacher contract to Regional was an unlawful severance of her tenure rights under the statutes. All seek comprehensive injunctive relief against the Regional School Committee and the Regional School District Superintendent, including specific remedial equitable action ordering immediate

distribution of teachers' continuing contracts or contract extensions as provided by 20 M.R.S.A., § 161(5). The single Justice below denied relief. We agree with his decision but for different reasons.

■ The defendants' motion to dismiss the complaint under Rule 12(b) (6), M.R. C.P., for failure to state a claim upon which relief can be granted, serves as an admission, for the purpose of the motion, of all well-pleaded material allegations. Maine Civil Practice, Field and McKusick, Commentary, § 12.11. Additionally, certain exhibits and stipulations were offered and made to the Court and received by it as part of the record through pre-trial conference at hearing on the motion. These were considered by the single Justice in reaching his decision as contemplated by Rule 12(b), M.R.C.P., and are also for our consideration on appeal.

■ Thus, the defendants have admitted the well-pleaded facts of plaintiffs' complaint to the effect that, at the time the Regional School District was created and organized, the plaintiffs had more than the three years of continuous teaching service in the respective high schools in which they had been teaching, whether it was the Bar Harbor High School in the Town of Bar Harbor, the Mount Desert High School in the Town of Mount Desert, or the Pemetic High School in the Town of Southwest Harbor. That the plaintiffs had vested tenure rights under 20 M.R.S. A., § 161(5) in the respective school systems in which they taught follows as a matter of law. The defendants further admitted as a well-pleaded fact of the plaintiffs' complaint that the defendant, Floyd O. Mathews, is the duly elected superintendent of the Mount Desert Regional School District. The plaintiffs' statement that the Mount Desert Regional School District by law embraces the Bar Harbor High School, the Mount Desert High School and the Pemetic High School is a conclusion of law and not an allegation of fact, and thus is not admitted by the filing of the motion to dismiss.

The plaintiffs rely upon three points on appeal:

1. The Court erred in finding that the letter of November 30, 1967 constituted a notice of non-renewal of contract under 20 M.R.S.A., Section 161(5) with a right to hearing and reasons.

2. The Court erred in finding that plaintiffs' "tenure" in the Town's secondary School Systems was not automatically transferred to the District upon the District's legal formation.

3. The Court erred in finding that after the District came into existence the Town's School Committee had any authority to act in regard to Secondary School Teachers' contracts.

The basic issue upon which this appeal is premised may be stated as follows: Where Mount Desert Island Regional School District was created directly by the Legislature through special and private legislation (Private and Special Laws, 1963, Chapter 176) and was not formed or organized under the general laws of the State, does Section 224, of 20 M.R.S.A., relating to the automatic assignment of teachers' and superintendents' contracts apply to such a school administrative unit? Said statute reads as follows:

"§ 224. *Operational date; teachers' and superintendents' contracts*

Notwithstanding the prior issuance of a certificate of organization, a School Administrative District shall not be in operation and shall not exercise any of its powers granted until the date set by the State Board of Education, as provided in section 302. On the date so set, the School Administrative District shall become operative and the school directors shall assume the management and control of the operation of all of the public schools within the district and the

municipalities, coterminous school districts or community school districts within said district on and after said date shall have no responsibility for the operation or control of the public schools within their respective jurisdictions, provided on the date so set the balance then remaining in the school accounts of the municipalities within said School Administrative District shall become the property of the School Administrative District and shall be paid over to the treasurer of the School Administrative District in equal monthly installments not to exceed 12 in number notwithstanding section 3453. The money held by any coterminous school district or any community school district within the School Administrative District shall also be transferred to the treasurer of the School Administrative District in the same manner and with the same limitations notwithstanding any provision in any charter to the contrary.

*On the date that the School Administrative District becomes operative, the contracts between the municipalities within the district and all teachers shall automatically be assigned to the School Administrative District as of the date so set and the School Administrative District shall be responsible for assigning the teacher to his duties and making payments upon said contract.* The contracts between the superintendents of schools and any of the municipalities within said district shall automatically be assigned to the School Administrative District as of the date so set and the superintendents' duties with regard to the towns within the School Administrative District shall be thereafter determined by the school directors and the School Administrative District shall pay thereafter the proportionate part of superintendents' salary that the municipality or municipalities heretofore were required to pay." [Italics mine.]

The plaintiffs contend that as in the case of School Administrative Districts, otherwise known as SADs, their teacher contracts with their respective towns as a matter of law were automatically assigned to Regional on the date Regional became operative and thus Regional became responsible for assigning them their duties as teachers and for making payments upon their contracts. They reach their legal conclusions from the fact that the Act which created Regional provides in Section 1, that

"[a]ll provisions of the general law relating to public education shall apply to the said Regional School except and to the extent that they shall be inconsistent with the provisions of this act,"

and in Section 5 thereof, that

"[t]he Regional School Committee shall have all the powers and duties with respect to the Regional School conferred upon superintending school committees under the general statutes, except to the extent that such powers and duties shall have been granted to the board of trustees under this act."

■ Our problem is one of interpretation and construction of our statutes relating to education. The plaintiffs urge that there should be no difference between school administrative units organized under general law such as any SAD, and Regional specially chartered by the Legislature, particularly in the area of teachers' tenure rights. They seek a construction lending uniformity between general and special statutes so as to obtain a comprehensive body of laws respecting the same subject matter. We are aware that all statutes on one subject should be viewed as one and such a construction should be made as will as nearly as possible make all the statutes dealing with the one subject consistent and harmonious. Inhabitants of Town of Turner v. City of Lewiston, 1938, 135 Me. 430, 433, 198 A. 734. We must not however lose sight of the fact that legislative intent must control and that special legislation may take precedence over general statutory provisions. See, Larson v. New

England Telephone and Telegraph Co., 1945, 141 Me. 326, 44 A.2d 1; Van Buren Light & Power Co. v. Inhabitants of Van Buren, 1920, 118 Me. 458, 109 A. 3; Poland Telephone Co. v. Pine Tree Tel. & Tel. Co., 1966, Me., 218 A.2d 487.

Two important State policies are involved. The first pursues the development of school administrative units of sufficient size to provide a more equalized educational opportunity for pupils, to establish satisfactory school programs and to achieve a greater uniformity of school tax rates and a more effective use of the public funds expended for the support of public schools. In legislative parlance, the School Administrative District is conceived as an effective vehicle for the attainment of these goals. See 20 M.R.S.A., § 211. The second State purpose, to secure and maintain an adequate and competent teaching staff, is served by providing teachers' tenure rights and by certain restrictive provisions protecting them from political or arbitrary interference with respect to employment or dismissal. This Court well stated the dual intendment of our education legislation in Benson v. Inhabitants of Town of Newfield, 1938, 136 Me. 23, 1 A.2d 227:

"No agency for the promotion of the state's best interests and general welfare is of greater importance than the schools of the state. The education of its youth is paramount. It is highly essential that those who instruct our boys and girls in the plastic period of their lives be men and women of character as well as possessed of educational qualifications. With this in mind, the legislature very properly saw fit to regulate the employment of teachers not only in the interest of the public but as well in that of the teachers themselves."

\* \* \* \* \* \*

"\* \* \* 'The public good is entitled to protection and consideration; and if, in order to effectuate that object, there must be enforced protection to the individual, such individual must submit to such enforced protection for the public good. 27 R.C.L., Section 3, page 907.'"

■ We must interpret and construe our educational legislation in the light of the fundamental public policy established by the Constitution of the State of Maine, Article VIII, which characterizes as essential the general diffusion of the advantages of education to the preservation of the rights and liberties of the people, and reposes in the Legislature the high duty and wide authority to promote this all-important object.

We recognize that the Legislature in its effort to implement the constitutional mandate has sponsored different courses whereby a better education for the children of the State could be obtained. The lawmakers settled upon different forms of school administrative units to carry out their constitutional duties dependent upon the diverse situations existing throughout the State and distinct corporate entities with a wide variety of powers and obligations were set up to meet diversified needs of the several areas of the State. See, 20 M.R.S.A., §§ 211–226: school administrative districts; §§ 351–360: community school districts; §§ 521–522: union schools; § 411: single municipality incorporated as a school district.

All these distinctive charters in public education were made available under the general law to such areas of the State as would meet the statutory requirements set up by the Legislature in its wisdom for the several possible types of school integrations within a range of large consolidations in areas of dense population to smaller groupings where the State is sparsely settled.

■ That the Legislature has pre-determined in general legislation certain specific eligibility requirements as standards for the creation of different school organizational units to undertake and carry out its educational mission, does not deprive

the lawmakers of their authority to create other school corporate units of similar or variable structures by special and direct legislation. The Legislature can create at any time and in any case any other school administrative district by special act. See, McGary et al. v. Barrows et al., 1960, 156 Me. 250, 163 A.2d 747.

 "It is within the power of the legislature to divide [or join] towns into school-districts as it pleases." Parker v. Titcomb, 1889, 82 Me. 180, 183, 19 A. 162; Inhabitants of the Town of North Berwick v. State Board of Education, 1967, Me., 227 A.2d 462.

Unlike the school administrative district legislation under 20 M.R.S.A., §§ 211–307, the Act creating the Mount Desert Island Regional School District (Private and Special Laws, 1963, Chapter 176, §§ 1–16) was passed "for the purpose of organizing and maintaining a Regional School," in fact a regional high school since the word school was defined to mean grades 9 to 12, inclusive. It contemplated the immediate construction of a new Regional high school since in section 11 of the Act it directs that the annual meeting of the district shall be held within the district, *and at the school building when completed.* It did not affect the primary school system of the towns involved. Prior to the special Act, the towns of Bar Harbor, Mount Desert and Southwest Harbor were part of Union # 98 and Floyd O. Mathews was the Superintendent of Schools for Union # 98. The Union continued thereafter for the operation of the towns' primary system of education and Mr. Mathews remained as Superintendent of the Union while acting as Superintendent of the District. The special Act did not provide as did section 217 of the School Administrative District law that Regional had the authority to request of any of the participating towns that title to their former high school property and buildings be conveyed to the District; nor did it provide as section 224 of the School Administrative District law does, that the balance of money remaining

in the school accounts of the participating municipalities shall become the property of the District and be paid over to its treasurer. True, section 14 of the special Act did authorize the District to receive property from the towns and the towns to convey the same to the District but only upon a majority vote of the legal voters of the towns which should propose such action. The Mount Desert Island Regional School District, created by special Act, followed more closely the general legislation respecting the formation and organization of community school districts, 20 M.R.S.A., §§ 351–360, and in neither case did the lawmakers, as in § 224 relating to school administrative districts, provide for the automatic assignment of teachers' contracts from the participating municipalities to the District.

On November 30, 1967 all plaintiff teachers received the following notice:

"To: [individual teacher]

From: Superintendent of Schools
Subj.: Teacher—Contracts 1968

Since all existing secondary schools in Union #98 will be closing on a permanent basis in 1968 and all teaching positions will be terminated, you are hereby officially notified that the Towns of Bar Harbor, Southwest Harbor, and Mou*tn* Desert will issue no teaching contracts at the secondary level for the school year 1968–69.

Therefore, your present contracts are in force only until the end of the current school year (1967–68).

(Signed) Floyd O. Mathews
Floyd O. Mathews
Supt. of Schools"

The record is clear that the above notice was sent by Mr. Mathews in his capacity of Superintendent of Schools for Union #98 on the authority of the Superintendent School Committee for the Union to terminate teachers' contracts on the high school level with the towns of Bar Harbor, Southwest Harbor and Mount Desert be-

cause their three high schools were being eliminated and the responsibility for the organizing and maintaining of a Regional High School in the area for the school year 1968–69 would be taken over by the Mount Desert Island Regional School District.

"The right to terminate a contract, after due notice of 90 days, is reserved to the superintending school committee or school directors when changes in local conditions warrant the elimination of the teaching position for which the contract was made." 20 M.R.S.A., § 161(5).

Undoubtedly, the notice was sent to protect the respective towns from liability on their teachers' contracts in the light of this Court's decision in Elsemore v. Inhabitants of the Town of Hancock, 1941, 137 Me. 243, 18 A.2d 692. It was a termination notice and not the 6-months non-renewal notice provided by the same section 161(5) of 20 M.R.S.A. The error below in that respect, however, is of no benefit to the plaintiffs for the reasons to be discussed presently.

Plaintiffs contend that, having earned tenure rights of teachers after serving the 3-year statutory probationary period without receiving the 6-months non-renewal notice under 20 M.R.S.A., § 161(5), they became entitled under the tenure provisions of that section to an automatic extension of their teachers' contract for the school year 1968–69, notwithstanding the shift of responsibility respecting education in grades 9 to 12, inclusive, from their respective towns under a school union to the Mount Desert Island Regional School District. They assert, in other words, that the consolidation and consequent abandonment of the several high schools of the participating towns under Private and Special Act, 1963, Chapter 176, for the purpose of constructing, organizing and maintaining a high school under the jurisdiction of the Regional School District in no way affected their rights under the tenure provisions of our education law. We disagree.

Teachers' tenure rights in Maine are limited by the express provisions of the law creating them. It is clear that the Legislature did not intend to confer any special privileges or immunities upon the teachers themselves at the expense of the public interest necessitating school consolidations, and tenure rights attach only in the system in which they were earned [20 M.R.S.A., § 161(5)], unless the law expressly provides otherwise as in the case of School Administrative Districts (20 M.R.S.A., § 224). Furthermore, tenure rights are expressly subject to the statutory dismissal procedure for cause on notice and hearing under 20 M.R.S.A., § 473(4), and to the non-renewal legislative formality with subsequent hearing upon request under 20 M.R.S.A., § 161(5). Although we recognize that a teacher's tenure is a substantial, valuable and beneficial right, it is not for this Court but for the Legislature to compel its benevolent features to apply from one separate and independent school administrative unit to another distinct educational corporate entity, if it should determine that such legislative sanction would promote the paramount public welfare in education.

The Regional School District, as intended by the Legislature, was created a distinct separate legal entity from any one of the school committees of the participating towns. If, as contended by the plaintiffs, Regional had to honor the contracts of all teachers of the old high schools, such action might compel Regional to keep on the payroll at least for one year teachers not needed in the consolidated school. Section 5 of the Special Act grants to the Regional School Committee all the powers and duties with respect to the Regional School conferred upon superintending school committees under the general statutes and specifically the authority to elect teachers to serve in the Regional School and to fix their salaries without any limitation to teachers of the old high schools. The Legislature should not be held to have intended that a new and independent school ad-

ministrative unit such as Regional in the establishment of a new consolidated high school be circumscribed in its selection of its teaching staff by any requirement that it appoint teachers who had not passed their probationary test period within the system and whose qualifications for competency and quality were not subject to the initial scrutiny of its own school committee. Only clear legislative language to that effect could so limit the broad powers granted the Regional School Committee and deprive it of its discretion in the initial staffing of the new high school.

■ Teachers' tenure rights are always subject to the 90 days termination notice reserved to superintending school committees "when changes in local conditions warrant the elimination of the teaching position for which the contract was made." 20 M.R.S.A., § 161(5). When the Legislature determined by special act to transfer the responsibility of secondary education in Regional's territorial division from the participating towns to the Regional School District, it must be assumed that it did so on the ground that local conditions warranted the change. It must be presumed that the lawmakers knew that under such a change in local conditions contracts of teachers in the high schools being eliminated would be terminated. Failure to insert an apt saving clause in the Special Act to protect teachers of the old high schools is indicative of a legislative intent to have the matter of election of teachers for the new Regional School rest wholly in the discretionary judgment of the Regional School Committee.

■ The automatic assignment of contracts between municipalities within a district and all teachers in the municipal school systems therein to the School Administrative District as provided by 20 M.R.S.A., § 224, is not part of the general law or general statutes relating to public education within the meaning of the statutes using such terminology, but relates specifically and applies only to School Administrative Districts, otherwise known as SADs, or possibly to other school administrative units of equivalent or identical design. It does not apply to the Mount Desert Island Regional School District which is not of similar or identical pattern.

■ Pending the availability of the new Regional High School and the active assumption by the Regional School Committee of its responsibility to furnish secondary education to the people of the participating towns, the Superintendent School Committees of the towns of Bar Harbor, Southwest Harbor and Mount Desert had full authority to continue the operation of their secondary school system in Union # 98. Without statutory directives to the contrary, it would be within legislative intendment that a reasonable transition period would elapse before the District was ready to take over and the towns were obligated to discontinue. Plaintiffs' contention otherwise does not impress us.

■ Plaintiffs' contracts, notwithstanding tenure, were subject to termination by the Superintendent School Committees of the Towns of Bar Harbor, Southwest Harbor and Mount Desert and were properly terminated by due notice of 90 days under 20 M.R.S.A., § 161(5). The Regional School Committee had no obligation to elect any of the teachers in the old high schools and the proffer of probationary contracts to teachers that it did elect was proper under the law.

The entry will be

Appeal denied.

MARDEN, J., did not sit.